JAMES W. KING, Respondent, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Appellant.

First Department, May 27, 1921.

**Street railways — action for damages by passenger, who, while standing on elevated railway platform, was struck by bundle of newspapers thrown by third person from passing train — defendant not liable for act of third person — negligence on part of defendant not shown — res ipsa loquitur not applicable.**

The plaintiff, who had purchased a ticket and entered on the elevated platform at one of defendant's stations, was waiting for a train when a bundle of newspapers was thrown from a passing train, striking him and causing the injuries for which this action was brought.   It appeared that the Public Service Commission had formulated rules regulating the carrying of bundles of newspapers on elevated trains, one of which prohibited the throwing of bundles from trains while in motion, and that the conductors and guards were instructed to stand on the car platform while a train was passing a station and not to permit bundles of papers to be thrown from the train.

*Held,* that the defendant, in the absence of negligence chargeable to it, was not liable for the act of a passenger on its train in throwing a bundle of newspapers therefrom, which was the proximate cause of the injury.

There was no proof by the plaintiff of any course of conduct in regard to throwing bundles from moving trains at the station in question or any other, which would bring home to the defendant knowledge of a course of action upon the part of carriers of papers so as to charge it with responsibility, and furthermore the defendant had done all that it could be expected to do to prohibit the throwing of bundles from trains.

There was no proof that defendant's train approached the platform in question at a high and reckless rate of speed as alleged by the plaintiff, nor that it so passed the platform.

The absence of a guard on the platform of the car from which the papers were thrown cannot be said to have been the cause of the accident.

The doctrine of *res ipsa loquitur* has no application to this case, since that doctrine applies only where the instrumentality through which the accident happens is solely and entirely under the control of the defendant.

Greenbaum and Merrell, JJ., dissent, with opinion.

Appeal by the defendant, Interborough Rapid Transit Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 1st day of December, 1920, on the verdict of a jury for $1,500, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*James L. Quackenbush* [*A. H. Cole* of counsel], for the appellant.

*James A. Beha* [*John J. Cunneen* with him on the brief], for the respondent.

Dowling, J.:

The complaint herein sets forth that on October 23, 1918, and for a long time prior thereto the defendant, its agents, servants and employees, recklessly, carelessly and negligently permitted and assisted in the distribution of packages of newspapers along the lines of its Third Avenue elevated railroad, and recklessly, carelessly and negligently permitted its agents, servants and employees and others to throw or hurl bundles of newspapers from the platform of its trains to the platform of its station along its tracks while the said trains were passing said station platforms at a high and reckless rate of speed. It then averred that about one P. M., on the 23d day of October, 1918, plaintiff entered upon the defendant's elevated structure at Eighteenth street and Third avenue, in the city of New York, on the east side of the avenue, and after paying his lawful fare entered upon the platform of the station adjoining the uptown track, and while standing on the platform of the station and awaiting a train upon which to go uptown, for which purpose plaintiff became a passenger of the defendant company and had paid his lawful fare, one of the trains of the defendant company approached the station

at a high and reckless rate of speed and passed the station and platform at such a rate of speed without stopping, and the defendant, its agents, servants and employees, recklessly, carelessly and negligently, and while said train was passing at such high and reckless rate of speed, threw or permitted to be thrown to defendant's platform, where plaintiff was standing, a large bundle of newspapers, which bundle of newspapers struck the plaintiff, causing him to be thrown to said platform, severely injuring him; all to his damage in the sum of $10,000. It was further alleged that plaintiff was not guilty of any contributory negligence.

Upon the trial the testimony offered in behalf of plaintiff was limited to the specific occasion upon which the accident happened and there was no attempt made to prove the allegations of the complaint that for a long time prior to the date in question defendant had permitted its employees to assist in the distribution of packages of newspapers along the line of its railway in a negligent manner or that it had negligently permitted its employees and others to throw bundles of newspapers from the platforms of its trains to the platforms of its stations, while the trains were passing the platforms at a high and reckless rate of speed.

It appeared upon the trial that the Publ'c Service Commission on August 24, 1915, had approved certain rules and regulations of the defendant in relation to the method of carrying bundles of newspapers, applicable both to its subway and elevated lines. These regulations varied according to the hour when the papers were carried upon the trains, but in a general way they provided for the size of the bundles, that they should be furnished with a strap and a handle by which they might be carried, each person to carry not more than two bundles; that a fare was to be collected for both the carrier and the bundles; that not more than one carrier in charge of two such bundles was to be permitted on the front platform of the rear car, and another carrier with two bundles on the rear platform of the car next to the rear car; that not more than two carriers and four bundles were to be allowed on any train between the hours of seven and ten A. M. and four and seven P. M., but there was no restriction as to

hours apart from these. The 6th rule provided that the bundles were to be deposited on the car platform at the points indicated by the guards and were to be carried off the train, by the person carrying them, with one bundle in each hand. The 8th rule provided that the throwing of bundles or packages of papers from trains was strictly prohibited and offenders would be liable to arrest.

The plaintiff called as his first witness William C. Russell, an instructor of motormen, conductors and guards at the school maintained by defendant for training its employees, and he testified that instructions were given in the school to keep the gates closed, and never open them while a train was in motion; that the men were instructed to stand on the car platform until the train was away from the station, and never to allow any newspapers to be thrown from the platform of a car of the train at any time until the train came to a stop. In passing stations the guard was directed to stand on the car platform until the train was out of the station. Certain rules of the defendant were read in evidence by plaintiff's counsel as follows:

" Rule 579: All trains must carry a conductor or guard on the rear car."

" Rule 577: Trainmen must always be at their posts on the car platform when the train is at or passing station platforms, and must only enter car as provided in the rules, or in the line of duty."

" Rule 608: * * * Motormen receiving orders to skip stations must blow whistle signal before entering station to warn passengers or employees that the train is not to stop. Maximum speed allowed passing stations without stop is 18 miles an hour.".

The plaintiff testified that on October 23, 1918, at one P. M., he went to the Eighteenth street station of the defendant's Third Avenue elevated railroad, bought his ticket, dropped it in the box and went upon the platform to await an uptown train. He saw no train in sight and was informed by the agent that there was a block on the road but that trains were running and would be along in a few minutes. Three or four trains passed without stopping and from one of these, either the third or fourth (he is not certain which), a bundle

was thrown as he was facing the train and struck him on the left ankle, threw him down, stunned him, and caused his hat to roll onto the tracks. There was no break in the skin on his arm but it swelled up. He went to the agent and informed him that he had been struck by a bundle of newspapers and that they were picked up by a man who was waiting there. He testified that the train was going from fifteen to seventeen miles an hour as it passed. When he first saw the bundle of papers it was from a distance of thirty to thirty-five feet, and he saw a young man laying them on the edge of the gate which protects the car platform. When they were thrown they dropped on the platform and rolled until they struck him. They were pushed out from the top of the gate. He saw no guard on that platform of the car, which was the front platform of the last car of the train. There was no other person thereon. The plaintiff, on cross-examination, testified that he went uptown on the next train and from there to his doctor's office. He described the bundle of papers as being about the size of a brief case and said it was pushed from the train as it reached the end of the station and then rolled until it struck him. He identified the person who picked up the papers as one Braunstein who, when plaintiff told him that he had been hit by them, said they were his papers. There was no one between the plaintiff and the bundle of papers as it was pushed from the train and he was back against the railing and did not think they would reach him. This constituted all the testimony for plaintiff, save that as to the nature of his injuries.

For the defendant it was shown that the order of the Public Service Commission was posted on the bulletin boards for trainmen and conductors to read and observe. The station master, Schorsch, testified that plaintiff had reported to him that a bundle of papers had been thrown off and hit him on the arm, but he could see no mark thereon when it was shown to him. On cross-examination he testified that two trains had gone by without stopping and that the train in question was the third train which had so passed. He admitted that Braunstein was there waiting for his papers. Conniff, the defendant's train dispatcher at South Ferry, was called to give the number of the last car of this train, which he had ascertained as soon as he received word over the telephone

from the station agent of the claimed accident. Stietz, the conductor in charge of the third train which skipped the station stop at Eighteenth street at the time in question, was called to testify that no accident had been seen or reported by him. He also testified to his knowledge of the rules and as to the instruction received thereupon. Braunstein, the newsdealer, who was on the platform waiting for his papers, said he was waiting inside and saw the train pass and when he went out he saw his bundle and a man who claimed that the bundle had hit him. · The bundle bore the witness's name and contained papers for three dealers, in all about forty. The witness Kramer, who at the time in question was the regular deliverer of papers for Duhan, testified that he was the only one who made deliveries for him during the month of October, 1918, and that he never threw papers off while the train was in motion but he waited until the train stopped and then walked off and put them alongside the railing. On cross-examination he swore he did not throw any papers off at the time in question. Duhan, employer of the witness Kramer, testified that he had instructed his employees that if they threw papers off a moving train they would be liable to arrest and that he had given such specific instructions to Kramer. He swore that on the day in question he was with Kramer and that Kramer left the train at this station and put them on the platform. It was also shown by the witness Erickson that this was what is known as a " No Report Case " and that no report of the accident came from any one save the station agent. Allaire, the guard who was claimed to have been in charge of the rear car of this particular train, swore that there were no papers aboard the train and that no accident had happened of which he heard.

The case thus is reduced to that of a passenger of the defendant railroad who, while waiting for a train to arrive on which he intends to take passage, is injured by a bundle thrown from an approaching train which passes the station without stopping. While the identity of the person who threw the bundle from the train is not shown, it does appear that he was a young man and there is no claim that he was a guard or other employee of the defendant railroad. Of course, the defendant is not liable for the act of a passenger

who throws some object from the train. As none of its employees is charged with having thrown the bundle, the sole theory of its liability must be that it was guilty of some negligence which caused the accident. The plaintiff concedes that he has not shown any course of conduct in regard to throwing bundles of papers from moving trains at the station in question or any other, which would bring home knowledge to the defendant of a course of action upon the part of carriers of these papers which would charge it with responsibility. There was not the slightest effort made to prove that this was actually done or that defendant had knowledge of such a violation of its rules. As a matter of fact it had done all that it could be expected to do to prohibit the throwing of bundles from its train. But plaintiff claims that he has established the cause of action set forth, not in the third paragraph of his complaint, but in the fourth. This alleges that while the plaintiff was a passenger of the defendant one of its trains approached the station at a high and reckless rate of speed and passed the station without stopping and that defendant, its agents, servants and employees recklessly, carelessly and negligently, and while said train was passing at such high and reckless rate of speed, threw or permitted to be thrown to defendant's platform, where plaintiff was standing, a large bundle of newspapers which struck the plaintiff. There is no proof that the train was approaching the platform at a high and reckless rate of speed, nor that it so passed the platform. As has been said, plaintiff concedes that there is no proof that any of defendant's employees threw this bundle off the train. Therefore, even under this paragraph of the complaint, the claim of negligence is reduced to the proposition that the defendant negligently permitted this bundle to be thrown off the train. Accepting plaintiff's testimony that there was no other person on the front platform of the rear car save the young man who threw the papers off, then the defendant must be held, if at all, upon the theory that the absence of the guard from the front platform was the cause of this accident. That is purely speculative and it does not seem to me that it could possibly be said to be the cause of the accident. If there had been a guard upon the platform in question and he had permitted the carrier

of the papers to throw them off, a different situation would arise; but there is not the slightest suggestion that the guard, if not upon the platform, may not have been about some proper business of the company in the car; and in any event, even if he knew that the papers were on the front platform of the car in the place they were required to be under the rules, that is, in such a position that no passenger would stumble over them (which would necessitate their being on the side of the car farthest from the gate over which they were thrown) upon this record he had no reason to believe that the carrier of the papers would attempt to violate the rules and subject himself to arrest by throwing the papers off while the train was moving.

Upon this record, the proximate cause of the accident was the unlawful act of the carrier of the papers, with which the defendant had no connection and which it is not shown it could have prevented, or that it had reason to believe that any such act would take place. Of course, all this is upon the assumption that the plaintiff's testimony is a correct and complete statement of what transpired and entirely disregards the opposing testimony for the defendant.

I am of the opinion that the plaintiff has failed to make out the cause of action set forth in his complaint and has failed to establish any negligence on the part of the defendant.

The doctrine of *res ipsa loquitur*, it seems to me, has no application to a situation such as this case presents. That doctrine applies only where the instrumentality through which the accident happens is solely and entirely under the control of the defendant. Here, the bundle of newspapers which caused the accident had never been in the custody of the defendant but of the employee of a third person over whom the defendant had no control. It is no different in its essential particulars from any other case where an object is thrown from a moving train which causes the injury. Unless that object is shown to have been thrown by some employee of the defendant or that it was an object which was part of the defendant's equipment or property, the burden is still upon the plaintiff to show whose negligence caused the accident and there is no assumption that it necessarily was that of the defendant.

The judgment and order appealed from should be reversed, with costs to appellant, and the complaint dismissed, with costs.

CLARKE, P. J., and LAUGHLIN, J., concur; MERRELL and GREENBAUM, JJ., dissent.

GREENBAUM, J. (dissenting):

Plaintiff does not claim that an employee of the defendant threw the bundle of papers which struck him, but concedes that it was thrown upon the platform by a carrier of the newspapers which were daily deposited on the various stations of the defendant railroad with the knowledge and sanction of the defendant.

The case was submitted to the jury upon the theory that the defendant owed a duty to the plaintiff as a passenger, who was lawfully on the platform awaiting an opportunity to board one of its trains, not only not to permit the person who had charge of the delivery of bundles of papers to throw a bundle from the train while in motion, but also to exercise reasonable care to prevent such an act.

Plaintiff testified that the guard was not on the front platform of the last car when the train was passing the station and there is no testimony to the contrary. Nor is he contradicted in his statement that he immediately after the accident talked with the station agent, one Schorsch, and one Braunstein, the newsdealer, about the accident. He also testified that three or four trains passed the station without stopping and that the bundle came from one of these trains. He established by the testimony of one Russell, an employee of the defendant and an instructor of its motormen, guards and conductors, that the conductors and guards must never allow newspapers to be thrown from the platform of a car at any time, and must never allow them to be removed from the cars until the train has come to a full stop; that it was the duty of the guard to be on the platform when a train passed a station without stopping, all of which are set forth in the company's book of rules which was introduced in evidence. Plaintiff also put in evidence an order of the Public Service Commission which recites: " That the following rules and

regulations of the Interborough Rapid Transit Company on its subway and elevated lines be and the same hereby are approved." *Inter alia,* the sections of the order provide: "3. One carrier with two of these bundles, one carried in each hand, will be allowed to enter the station and pass by the chopping box after depositing one ticket for himself and one ticket for the two bundles. 4. Not more than one carrier in charge of two such bundles will be permitted to ride on the front platform of the rear car of each train and another carrier with two bundles permitted to ride on the rear platform of the car next to the rear car. * * * 6. The bundles are to be deposited on the car platform at the points *indicated by the guards* [italics ours] and are to be carried off the train with one bundle in each hand. * * * 8. Throwing of bundles or packages of paper from trains is strictly prohibited and offenders will be liable to arrest. 9. In depositing bundles or packages on the station platform they must be so placed that passengers entering or leaving the car cannot stumble or fall over them."

The next to the last section provides: "For the information of all employees: Badges will be issued to the newspaper carriers," etc., ostensibly to enable the guards to identify the carrier in charge of newspaper bundles on his car. The order also requires the employees to report any breach of these regulations, but does not indicate to whom the report shall be made.

Defendant called as witnesses a guard named Allaire and a conductor named Stietz, who were on one of the trains that had passed Eighteenth street without stopping at about the time of the accident. Stietz testified that his train had skipped Eighteenth street, but that he did not know whether it was the last train to pass the station without stopping and further that he did not see any bundle of papers thrown from his train and that he knew nothing of the accident. Allaire stated that he was the guard on the last car of his train; that his train skipped Eighteenth street; that nothing was thrown from the platform; that he was standing on the platform when the train passed the station and that there were no papers on the platform of his car at all.

Adolph Schorsch, the defendant's station agent at the

Eighteenth street station at the time of the accident, testified that the plaintiff complained to him of the injury immediately after the accident and that he thereupon telephoned to the train dispatcher to ascertain the number of the train from which the bundle was thrown; and that the newsdealer was in the habit of getting his papers regularly every day upon the platform. Schorsch was not permitted to testify what the dispatcher told him, but one Conniff, a train dispatcher, testified that in answer to Schorsch's telephone inquiry, he told him that the number of the car was 1599. It is important to note that the witness Conniff answered the court's query, " Q. How do you know a train skipped the 18th Street station? " by saying, " I have no knowledge of that, your Honor."

Braunstein, the newsdealer, was called by the defendant and testified: " I see my bundle there and a man claimed they hurt him, the bundle. When I came outside, the train was passed and I find the bundle there on the platform." Adolph Kramer, the carrier in charge of the bundles, testified that he was the only one who delivered papers to Braunstein at the Eighteenth street station at the time of the accident, but that the bundle was not thrown from the train. However, he failed to explain how it came to be on the station platform if the train did not stop, but testified: " Q. You did not throw this bundle off at 18th Street, did you? A. I did not throw off. I don't know. I put off the papers. I did not throw off any papers."

We thus see from the testimony of the defendant's own witnesses that the defendant had received information as to the accident and was, therefore, in a position to ascertain and produce the guards or conductors who were on the trains which did not stop at Eighteenth street. Nevertheless, only two trainmen were called by the defendant. In view of the fact that three or four trains had passed Eighteenth street at about the time of the accident without stopping and that no testimony was given showing why the trainmen on other trains were not called, or from what train the bundle came, it was proper for the jury to consider these important circumstances in passing upon the question of defendant's negligence.

If the defendant's guard was on the platform at the time of the accident, that fact should have been established and

in that event it should have been shown what efforts, if any, he made not to permit the bundle of papers to be thrown off. If he was not on the platform when the train was passing the station as the plaintiff testified, that fact would be *prima facie* evidence of the defendant's negligence. This conclusion is justifiable because of the rules which required the presence of the guard on the platform of the car from which the bundle was thrown and which imposed upon the guard an affirmative duty to indicate to the carrier of the papers where the bundles were to be deposited. Besides, when an official becomes aware of the presence of a passenger on the train who has a number of bundles for the purpose of depositing them at various stations, there is a legal obligation to see to it that the removal of the bundles should not be a menace to the safety of passengers.

The doctrine of *res ipsa loquitur* is peculiarly applicable to the facts of this case. That rule is well stated in 29 Cyc. 591: " Perhaps a more accurate statement is that where the defendant owes to plaintiff a duty to use care, and the thing causing the action is shown to be under the management of the defendant or his servants and the accident is such that in the ordinary course of things does not occur if those who have the management or control use proper care, the happening of the accident in the absence of evidence to the contrary is evidence that it arose from lack of requisite care." (See *McNulty* v. *Ludwig & Co.*, 153 App. Div. 206, citing *Griffen* v. *Manice*, 166 N. Y. 188.)

The defendant owed the plaintiff a duty to provide a safe place for him to await the coming of the train. Moreover, there is no doubt that defendant had control and management over the distribution of the newspapers which caused the accident and that the Public Service Commission's order as well as the other rules of the company requiring the guard to be on the platform when a train is in or passing through a station, presumably were promulgated for the purpose of guarding against just such an occurrence as is complained of here.

The appellant's counsel cites a rule from 10 Corpus Juris, 901, as follows: " Unless such agents or servants [of the carrier] know or ought to know that danger from fellow-

passengers exists or is reasonably to be apprehended and can by the use of proper care prevent the injury, the carrier is not liable. Thus the carrier is not liable where the injury is caused by acts of a fellow-passenger which its agents or employees had no reason to apprehend and which they could not by the exercise of proper care prevent."

This is undoubtedly a sound rule and is indeed peculiarly pertinent to the instant case, where it was shown that defendant realized the danger to its passengers in permitting bundles of papers to be delivered at station platforms by the order of the Public Service Commission which promulgated the rules heretofore detailed.

Had the guard been on the platform as the rules provided, he might have prevented the throwing of the newspapers. In *Robinson* v. *Consolidated Gas Co.* (194 N. Y. 37, 41) the court said: " If the *res*, or the entire occurrence as proved, could not have happened without negligence of some kind, negligence is presumed without showing what kind and the burden of explanation is thrown on the defendant. If, however, proof of the occurrence shows that the accident might have happened from some cause other than the negligence of the defendant, the presumption does not arise and the doctrine cannot properly be applied. Under such circumstances, it is for the jury to find whether the accident was owing to negligence on the part of the defendant, or to some cause for which the defendant was not responsible. The principles upon which the doctrine rests and the circumstances under which it should be applied were so clearly pointed out by Judge CULLEN in *Griffen* v. *Manice* (166 N. Y. 188), the leading case upon the subject, that further discussion thereof is unnecessary."

Assuredly in the case under review the occurrence as proved could not have happened without negligence of some kind and there can be no question that the defendant has failed to give any explanation from which it may be deduced it was not guilty of negligence.

It is true that the complaint in this action alleged specific acts of negligence and the case was tried on that theory. It is, however, clear from the case of *D'Arcy* v. *Westchester Electric R. Co.* (82 App. Div. 263) that the plaintiff in an action for personal injuries does not waive the right to rely

on the presumption of negligence arising out of the fact of the accident because he alleged or attempted to prove specific acts of negligence.

I think the verdict of the jury was correct and that the judgment should be affirmed.

MERRELL, J., concurs.

Judgment and order reversed, with costs, and complaint dismissed, with costs.