**LOUISVILLE TAXICAB & TRANSFER CO., Inc. v. JACKSON.**

Court of Appeals of Kentucky.
Oct. 10, 1952.

Robert L. Page, Louisville, for appellant.

Charles W. Anderson, Jr., Harry S. Mc-Alpin, Louisville, for appellee.

CAMMACK, Chief Justice.

From a judgment awarding damages to appellee for personal injuries, this appeal is prosecuted. Appellant contends that (1) it was entitled to peremptory instruction; and (2) there was error in instructions.

Appellee and another woman were attempting to cross to the north side of Broadway at Fourteenth Street in Louisville. Each of them testified as to the facts and circumstances of the accident. Appellee stated:

"We were standing—we were in the street, in the middle of the street waiting for the westbound traffic to cross. We were right in the center, and we had to wait on the line in order for the other traffic to pass so we could continue crossing, and there was no other cars in front of this Yellow Cab because we had to stop and face the Yellow Cab. That is why we know so definitely it was a Yellow Cab, and not knowing anything would happen we didn't look for any numbers. We were just waiting for the cars to pass, and just as the car passed, this bottle come out of this window, but before the car got to us, what made us notice it before was that there was a lot of boisterous laughing and talking coming from this cab, and then after it got to us we could see a flash of bottle of some type, some shiny object I will say, in the back of the car, and just as it got to us, well, this bottle come out of the window and struck me in the mouth."

The testimony of appellee's companion, Mrs. Tommie Howard, is very similar to and substantially corroborates the testimony of appellee. Appellant denies that a Yellow Cab with three male passengers was in this area at the time of the accident. However, B. A. Roberts, one of appellant's drivers, testified that he was in this area and had two women passengers in his cab and that he saw a bottle thrown from a car directly in front of him at the time and place appellee was injured.

Many cases are cited by each of the parties. However, most of the cited cases deal with the relationship of a carrier and passenger. None deals with the degree of care that a carrier must exercise to protect a pedestrian from the negligent or intentional acts of its passengers. A taxicab owner engaged in the business of transporting passengers for hire is a common carrier and is under a duty to exercise the highest degree of care for its passengers. Griffin v. Louisville Taxicab & Transfer Co., 300 Ky. 279, 188 S.W.2d 449; Dix v. Gross, 271 Ky. 231, 111 S.W. 2d 673.

The case of Nashville, C. & St. L. Ry. Co. v. Lowery's Adm'r, 148 Ky. 599, 147 S.W. 19, 23, while it involves a railroad, is analogous to the instant case. Bridges, a passenger on defendant's train, was intoxicated and in possession of a gun. While the train was moving, Bridges leaned out of the window and shot Lowery, who was walking beside the tracks. He said he intended only to scare the old man. Action was brought against the railway company and judgment obtained. On appeal, the case was reversed because a peremptory instruction should have been given for the defendant. We said:

"It does not appear that, at the time the porter told Bridges to put his pistol up, Bridges was attempting in any way to injure any one, or that his handling of the pistol was likely to result in in-

jury. Therefore, when Bridges returned his pistol to his pocket, which he must have done, and was guilty of no further misconduct at Hazel than to halloa loudly to those leaving the train, we fail to see how it could have been reasonably contemplated from Bridges' conduct that, unless put off the train or restrained in some way, he would perceive some one walking along the track and deliberately shoot at him for the purpose of making him 'jump up.' Had he, with the knowledge of those in charge of the train, been engaged in shooting from the train, or had his conduct been such as to indicate with reasonable certainty that he intended to shoot from the train, a different case would be presented. As it is, the record fails to disclose any series of acts on the part of Bridges, or any single act, committed in the presence of those in charge of the train, from which the intended use of the pistol could have been gathered, or from which it could have been reasonably apprehended that Bridges would be guilty of the malicious prank resulting in the death of Lowery."

The facts in the Lowery case are much stronger than those in this case. According to appellee's evidence, these facts appear: A few seconds before the accident occurred appellee heard boisterous laughing and talking coming from the cab; a shiny object was seen in the back seat of the car; and as the taxicab passed, appellee was hit with a bottle which came out of the cab window. There is no evidence that any of the passengers threw or intimated that they were going to throw a bottle from the window. Under the Lowery case, before liability will attach to a carrier, the latter must have knowledge that the passenger had previously thrown a bottle through the window or that the passenger's conduct was such as to indicate with reasonable certainty that he intended to throw a bottle through the window. There is no evidence that the carrier or his agent knew that his passenger had a bottle. As for the passengers' conduct, one

witness testified that they acted as if they had been drinking.

Assuming that the passengers were intoxicated, that fact alone does not fasten liability on the carrier. In Payne, Agent v. Moore, 196 Ky. 454, 244 S.W. 869, 871, the case turned on whether or not the passenger who committed the assault had been guilty of any prior misconduct so as to induce a reasonable brakeman to anticipate such an assault. Before the assault, the passenger had been laughing and talking and having a good time. The court held that this was not such misconduct as would justify the inference of probable danger to other passengers. The plaintiff argued that the passenger was crazy drunk when he hit her and that he did not become so in the twinkling of an eye, and that there must have been some prior indication of his condition which could have been discovered by the exercise of the highest degree of care. In disposing of this contention the court said:

"The difficulty with this contention lies in the fact that there is no evidence on which to base it. It does not clearly appear whether the passenger was crazy or drunk. If crazy, he might have become so unexpectedly. If drunk, the concoction of which he partook might not have reached the zenith of its power until the assault was actually made. At any rate, no presumption of prior misconduct can be indulged in the face of the positive testimony of every witness who saw the passenger that he was quiet and orderly. That being true, the case, as made out by the evidence, is simply one where the plaintiff was the victim of a sudden and unexpected assault which could not have been foreseen and prevented by the utmost care on the part of those in charge of the train."

In Brehony v. Pottsville Union Traction Co., 218 Pa. 123, 66 A. 1006, 1007, a passenger entered a street car and took a seat. When he refused to pay his fare, the driver ejected him. The passenger kicked at the driver and hit the plaintiff. All of the witnesses testified that the passenger was

drunk when he was ejected from the car. None testified as to his conduct while approaching the car. The court held that danger cannot be anticipated by admitting a person who is simply intoxicated. "Intoxication is not infectious; nor does it so ordinarily express itself in violence that disturbance of the peace of the car is to be reasonably apprehended when an intoxicated person is admitted. There may be, and doubtless are, exceptional cases where the intoxication is so gross, the conditions resulting therefrom so offensive, the conduct of the individual so unbecoming and violent, as to justify, and indeed require, his exclusion. If this was the condition of the offending passenger here, so obvious that the conductor should have observed it, such facts should have been made to appear as part of the plaintiffs' case."

In the last two cases, the carrier was under duty to exercise a high degree of care. Appellant in the instant case was only required to exercise ordinary care as to pedestrians. Mere laughing and boisterous conduct alone were not such conduct as to indicate with reasonable certainty that the person intended to throw the bottle from the taxicab. The case is further weakened since the evidence of boisterous conduct is only of a few seconds duration. What happened previous to this time is pure speculation. On the basis of the Louisville case, a directed verdict should have been entered for the appellant. For related cases see Baltimore & O. Ry. Co. v. Rudy, 118 Md. 42, 84 A. 241; Pruett v. Southern R. Co., 164 N.C. 3, 80 S.E. 65, 49 L.R.A.,N.S., 810; King v. Interborough Rapid Transit Co., 197 App. Div. 15, 188 N.Y.S. 700, reversed in 233 N.Y. 330, 135 N.E. 519.

Appellee urges that this is a case where the doctrine of res ipsa loquitur should be applied. The bottle which struck the appellee was in the possession of the passengers and was never in the control and custody of the appellant. The doctrine clearly should not apply here.

Appellant contends that Instruction No. 1 is erroneous.

"* * * and if you further believe from the evidence that the passengers in said taxicab of the defendant were loud, boisterous and drinking, and that the driver of said taxicab knew, or by the exercise of ordinary care could have known of said condition of said passengers in said taxicab, then it was the duty of the driver of the taxicab of the defendant, in the exercise of ordinary care, to either stop his taxicab and evict said passengers from the taxicab or to call the police * * *."

The duties set out in this instruction were taken from KRS 277.260, subsection (1) which provides that "No person riding on a train shall * * * behave in a boisterous or riotous manner * * *." Subsection (2) provides that "The conductor of any train upon which there is a person who has violated any of the provisions of this section shall either put such person off the train, or give notice of the violation to a peace officer * * *." First of all, the statute was passed for the protection of passengers and cannot be relied upon by a pedestrian or licensee. Nashville, C: & St. L. Ry. Co. v. Lowery, 148 Ky. 599, 147 S.W. 19. Furthermore, the statute and the duties imposed by it have reference to trains and not to taxicabs. Appellee also contends that the appellant was violating KRS 244.020 by permitting passengers to drink alcoholic beverages in the taxicab and for carrying persons under the influence of alcoholic beverages. KRS 244.990 provides for a fine or imprisonment for any violation. The statute only provides a penalty for the offender and does not prescribe any course of conduct for the operation of a carrier. The statute does not change or affect the rule laid down in Nashville, C. & St. L. Ry. Co. v. Lowery, supra. The instruction is erroneous since it prescribes a course of conduct other than ordinary care in the absence of the statute. This point is immaterial since a directed verdict should have been given for appellant.

The judgment is reversed for proceedings consistent herewith.