Joudeh HAMED, Plaintiff-Respondent and Cross-Appellant,

v.

COUNTY OF MILWAUKEE, Defendant-Appellant and Cross-Respondent.

Supreme Court

*No. 81–683. Argued June 1, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 199.)

258

For the defendant-appellant and cross-respondent there were briefs by *Terrance E. Davczyk, Michael A. Mesirow* and *Kasdrof, Dall, Lewis & Swietlik, S.C.*, of Milwaukee, and oral argument by *Mr. Mesirow*.

For the plaintiff-respondent and cross-appellant there were briefs by *Michael I. Tarnoff* and *Warshafsky, Rotter, Tarnoff Gesler & Reinhardt, S.C.*, of Milwaukee, and oral argument by *Michael I. Tarnoff*.

SHIRLEY S. ABRAHAMSON, J.   This is an appeal and a cross-appeal from a judgment of the circuit court for Milwaukee county, Frederick P. Kessler, Circuit Judge, on certification of the court of appeals.   Sec. (Rule) 809.61, Stats. 1979–80.[1]

Joudeh Hamed, the plaintiff, brought this personal injury action against Milwaukee County for injuries

---

[1] The court of appeals certified three questions to this court: "(1) Whether the Wisconsin court should hold as a matter of public policy that a municipality is not liable to a bystander injured by a school bus passenger; (2) whether negligent supervision of school bus passengers constitutes the negligent operation of a motor vehicle within the meaning of sec. 345.05(2), Stats.; and (3) whether a plaintiff's action for damages must be dismissed when the plaintiff has previously been compensated for his injuries under ch. 949, but fails to join the Department of Industry, Labor and Human Relations (DILHR) as a party to his subsequent civil action."

Because of our interpretation of sec. 949.15 and the phrase "the person responsible for such injury or death" we need not reach the third question certified by the court of appeals.

sustained as the result of being hit by a jelly bean fired by a thirteen-year-old passenger riding on one of county's buses. Trial was had to a jury which found the county negligent in the supervision and control of the passengers of its bus and awarded plaintiff damages of $36,570.98. The circuit court denied all of defendant's motions after verdict except that the circuit court reduced the award to $25,000 plus costs pursuant to sec. 895.43(3), Stats. 1977, which limits tort recovery against a municipality to $25,000. Prior to trial the plaintiff had received $10,000 from the Department of Industry, Labor and Human Relations (DILHR) pursuant to the provisions of chapter 949 of the Wisconsin Statutes (1977).

The county raises three issues in its appeal. First, the county asserts that the plaintiff's action must be dismissed because the plaintiff failed to join the DILHR as a party, or that the plaintiff's award must be reduced by the sum of $10,000 which the plaintiff received from DILHR. Second, the county asserts that the circuit court did not properly instruct the jury as to the defendant's duty to the plaintiff. Third, the county contends that the evidence is insufficient to support the jury's affirmative answer to special verdict question number one asking whether the county was negligent in the supervision of the passengers.

In its cross-appeal the plaintiff contends that the circuit court erred when it reduced the jury award to $25,000 pursuant to sec. 895.43(3), Stats. 1977.

The court of appeals certified both the appeal and the cross-appeal to this court. We affirm the judgment of the circuit court.

I.

The controversy hinges on the following facts. In the early afternoon of March 23, 1979, the plaintiff was standing at the southeast corner of North 27th Street

and State Street in the county of Milwaukee speaking to his wife when he was struck in the right eye by an object later identified as a jelly bean, fired from a slingshot by Michael Lucas, a thirteen-year-old passenger riding on a bus operated by the Milwaukee County Transit System. As a result of being struck by the jelly bean the plaintiff suffered severe and permanent injury to his right eye. Initially, the plaintiff suffered loss of vision in his right eye and subsequently the eye was removed and replaced by an artificial eye.

Michael Lucas, a junior high school student, had boarded the bus, commonly referred to as the Walker Flyer, at Walker Junior High School in Milwaukee. He sat near the window, two or three rows behind the driver. Lucas opened his window immediately after he sat down. At that time, the outdoor temperature was somewhere in the fifties, and it is unclear how many other bus windows were open. When Lucas boarded the bus his slingshot was in a brown paper bag. As the bus crossed the 27th Street viaduct, Lucas fired objects from his slingshot at signs along the viaduct. Lucas testified that about a block after the viaduct the driver told him to put the slingshot away. Lucas either put away the slingshot or pretended to do so.

After the bus driver told Lucas to put away the slingshot, Lucas took the slingshot out again and looked for something on the floor to use as ammunition. He found some candy and fired a jelly bean from the slingshot through the open window of the bus. The jelly bean hit the plaintiff and caused the injuries previously described. Lucas testified that as he fired the slingshot at the plaintiff, his friend sitting next to him told him that the driver was looking.

The bus driver testified that he saw Lucas' slingshot through his rearview mirror, and that he instructed the boy to put the slingshot away because he thought the

slingshot would be used against passengers on the bus. While the driver testified that he saw the slingshot, he also testified that he did not see the slingshot being used. He said that he did not see Lucas fire it out the window either at signs along the viaduct or at pedestrians. The driver's pre-trial and trial statements as to the time when he saw the slingshot are inconsistent, and the driver's pre-trial statements as to when he saw the slingshot and when he warned Lucas to put it away are not consistent with the testimony of other witnesses to the events.

At trial there was testimony by Max Lukas (no relation to Michael Lucas) who, as superintendent for transportation for the Milwaukee County Transit System, is concerned with safety standards for the Transit System. Lukas testified that in his job he was concerned for the safety of pedestrians who might be affected by conduct of the people on the bus. Lukas testified that drivers are instructed to take two basic steps if they are concerned with a disturbance on a bus: First, the driver can turn on the vehicle's flashers, which are a signal to police that the driver wants assistance. Second, the driver can notify the dispatcher of the disturbance. Neither step was taken in this case. Lukas testified that drivers are instructed that they are ordinarily not to intervene physically in a disturbance and that they are ordinarily not to take personal property away from passengers. Lukas testified that if a bus driver observed a passenger with a slingshot, one possible way of handling the situation would be for the bus driver to close the window next to the passenger. The bus driver in the instant case did not close the window next to Lucas or request that it be closed. No Transit System regulation suggests that the driver close a bus window, but no Transit System regulation prohibits the driver from doing so.

Mary Nettles, a student who had ridden the Walker Flyer bus during the school year in which this incident occurred, testified that she observed bus drivers on the

Walker Flyer (although not necessarily the driver in question) take personal property (including drumsticks and basketballs) away from passengers on at least four or five occasions and return the property to them when they exited the bus.

## II.

The plaintiff received $10,000 from the state under the Crime Victims Compensation Program administered by the Crime Victims Compensation Board of DILHR. Sec. 949.15, Stats. 1977, states that when an award has been made, DILHR shall be subrogated to the cause of action of the claimant against "the person responsible for such injury" and shall be entitled to bring an action against such person. Sec. 949.15, Stats. 1977, provides as follows:

"Sec 949.15 **Recovery from offender.** Whenever an order for the payment of an award for personal injury or death is or has been made under this chapter, the department shall be subrogated to the cause of action of the applicant against the person responsible for such injury or death and shall be entitled to bring an action against such person for the amount of the damages sustained by the applicant. If an amount greater than that paid pursuant to the award order is recovered and collected in any such action, the department shall pay the balance to the applicant."

Sec. 949.15(2), enacted by ch. 189, Laws of 1979, having an effective date after the commencement of this action, further provides that if the claimant brings an action to recover damages in which the department (which was defined in 1979 to mean the Department of Justice, not DILHR) has subrogation rights the claimant shall join the department as a party. Sec. 949.15(2), Stats. 1979–80, reads as follows:

"If a claimant brings an action to recover damages in which the department has subrogation rights under sub.

(1), the claimant shall join the department as a party under s. 803.03(2)(a). After joinder, the department has the options specified in s. 803.03(2)(b)."

The county asserts that the plaintiff's failure to join DILHR pursuant to sec. 949.15(2), Stats. 1979–80, requires dismissal of the action. The circuit court ruled that the county's motion to dismiss was not timely filed. We need not reach the questions of whether the county interposed its objection in a timely fashion or whether 949.15(2) does not apply because its stated effective date is subsequent to the commencement of this action. We conclude that sec. 949.15(2), Stats. 1979–80, is not applicable to the instant case, because the county is not the person responsible for the injury under sec. 949.15.

Under sec. 949.15(1) the department is subrogated to the claimant's action against the "person responsible for such injury or death." Sec. 949.15(2) appears to require joinder only if the claimant brings an action in which the department has subrogation rights under sec. 949.15 (1). Thus sec. 949.15(2) applies only where the claimant brings an action against the "person responsible for such injury or death." The phrase "person responsible for such injury or death" is not defined in chapter 949, and there is no legislative history to aid in interpreting this phrase. Chapter 949 uses several phrases, *e.g.*, "offender," recovery "from or on behalf of the person who committed the crime," as well as "person responsible for such injury or death," none of which is defined.

The purpose of the doctrine of subrogation is to avoid unjust enrichment. Subrogation rests on equitable principles that someone (other than a volunteer) who pays for the wrong of another should be permitted to look to the wrongdoer to the extent that he has paid a debt or demand which should have been paid by the wrongdoer. *First Nat. Bank of Columbus v. Hansen,* 84 Wis.2d 422, 428, 267 N.W.2d 367 (1978). Sec. 949.15 appears to

limit the application of the equitable doctrine of subrogation. The Department's subrogation rights are limited to the claimant's action against one class of persons—namely, the person responsible for such injury or death. Compare sec. 13, Uniform Crime Victims Reparation Act, 11 ULA p 46 (1974) which provides that the state is subrogated to the claimant's rights to receive benefits from a source which fits within the Act's definition of a collateral source. Sec. 1(d) of the Uniform Crime Victims Reparation Act.

The county asserts that the plaintiff in the instant case in bringing an action against the county is suing the "person responsible for such injury or death" within the meaning of sec. 949.15(1) and (2) and that therefore the department must be joined as a party. We are not persuaded that the county is the "person responsible for such injury" under sec. 949.15(1). Chapter 949 deals with awards to victims of crimes. The county is not a party to the crime. The plaintiff brought a civil action against the county in the instant case asserting the county is vicariously liable for damages for his injury. The plaintiff is suing the county in a civil suit under the doctrine of respondeat superior for injury caused by the negligence of a county employee in supervision of a passenger. The passenger happened to commit a crime which caused the injury, which brought chapter 949 into play. When we read the words of sec. 949.15 and when we read the section in the context of all the provisions of chapter 949, it appears that the legislature must have intended the phrase "person responsible for such injury or death" to refer in the instant case to the person whose commission of or attempt to commit a crime resulted in the injury, namely Lucas. Accordingly we hold that DILHR is not subrogated to plaintiff's cause of action against the county and need not be joined as a party in this case.

Because the jury was instructed by the circuit court that the plaintiff would have to pay DILHR $10,000 out of any award received, the question arises whether, even if DILHR is not subrogated to the cause of action against the county and is not entitled to any reimbursement from the plaintiff, the judgment of $25,000 against the county ought to be reduced by the sum of $10,000, the amount the plaintiff was awarded by DILHR under chapter 949. If the jury followed the instructions it must have awarded the plaintiff the sum of $36,570.98 with the intent that the plaintiff reimburse DILHR. The jury therefore intended plaintiff to receive the net sum of $26,570.98 from the county as a result of the lawsuit. The jury was not informed of the $25,000 limitation on plaintiff's recovery from the county. The argument favoring reducing the judgment by $10,000 is that unless the court reduces plaintiff's award by the sum of $10,000, the plaintiff will have recovered too much. This argument ignores the operation of sec. 895.43(3). Because the circuit court reduced the amount of plaintiff's recovery by more than $10,000, namely it reduced the jury award of $36,570.98 to the statutory limit of $25,000, even if the plaintiff does not reimburse DILHR, the plaintiff will recover less from the county than the jury considered just compensation for plaintiff's injuries. Although the circuit court erred in instructing the jury that the plaintiff would have to reimburse DILHR the sum of $10,000, we are not persuaded that we must reduce the judgment against the county to the sum of $15,000 in order to prevent the plaintiff from receiving a windfall.

## III.

A cause of action in negligence must set forth four elements: (1) a duty of care on the part of the defendant;

(2) a breach of that duty; (3) a causal connection between the conduct and the injury, and (4) an actual loss or damage as a result of the injury. *Christians v. Homestake Enterprises, Ltd.,* 101 Wis. 2d 25, 32, 303 N.W.2d 608 (1981). Only the first element is in issue in this case.

Both parties agree that the county in this case is a common carrier and that a common carrier has the duty to use reasonable care in the operation of the vehicle and in the supervision of the conduct of the passengers on the vehicle to protect pedestrians from injury. The question is when does the carrier's duty to use reasonable care arise. This court has said that "[a] defendant's duty [to use reasonable care] is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs." *A.E. Investment Corp. v. Link Builders,* 62 Wis. 2d 479, 484, 214 N.W.2d 764 (1974).[2] Accordingly, the plaintiff asserts that the carrier's duty to use reasonable care in the supervision of the conduct of the passengers is established when the carrier either knows an incident causing injury to a pedestrian may occur or has reason to anticipate (has reason to know) that an incident causing injury to a pedestrian may occur and that the degree of care a carrier must exercise to protect a pedestrian from the negligent or intentional acts of a passenger is that degree of care practicable under the circumstances to prevent the injury. The circuit court

[2] For a discussion of the concept of duty, see also, *Christians v. Homestake Enterprises, Ltd.,* 101 Wis. 2d 25, 303 N.W.2d 608 (1981); *Walker v. Bignell,* 100 Wis. 2d 256, 301 N.W.2d 447 (1981); *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 288 N.W. 2d 95 (1980).

adopted plaintiff's view and instructed the jury as follows:

"Question 1 in the special verdict reads: 'Were the agents or the employees of the Milwaukee County Transit System negligent with regard to supervising the passengers on the bus from which the slingshot was fired?'

"A person is negligent when he or she fails to exercise ordinary care. Ordinary care is the degree of care which the great mass of humankind ordinarily exercises under the same or similar circumstances. A person fails to exercise ordinary care when, without intending to do any wrong, he or she does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject the person or property of another to an unreasonable risk of injury or damage.

"A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone. A party is negligent when he or she commits an act when some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences, as well as foreseeable ones. In addition, he is liable to unforeseeable plaintiffs."

The county did not object to this instruction but proposed the following instruction which it asserts describes when the carrier's duty to use reasonable care in the supervision of passengers is established:

"Duty of Transport Company. You can find the Bus Company negligent only if you find its agents or employees failed to exercise ordinary care; before you can consider if the Bus Company failed to exercise ordinary care, you must first determine if there is any evidence that: 1) the Bus Company had knowledge that Michael Lucas had a slingshot and 2) that Michael Lucas *intended to harm* someone with it. Only if you find these two elements, may you then consider if the driver failed to exercise ordinary care upon obtaining such knowledge. (*Nashville, C. & St. L. Ry. Co. v. Lowery's Adm'r*, 147 S.W. 19; *Fletcher v. Baltimore & P.R. Co.*, 168 U.S. 135,

18 S.C. 35; 14 Am. Jur. 2d, Carriers, sec. 927.) (Emphasis supplied)

Although the language of the county's proposed instruction is ambiguous, both the plaintiff and the county interpret this proposed instruction as requiring the bus company (the county) (1) to have knowledge that the passenger had a slingshot and (2) to have knowledge that the passenger intended to harm someone with the slingshot before the county's duty to use reasonable care is established. The plaintiff was willing to agree to the county's proposed instruction if the words *"intended to harm"* in the proposed instruction were changed to *"might harm."* Under the wording proposed by the plaintiff, the county's duty to use reasonable care is established if the jury finds that the county had knowledge that the passenger had a slingshot and that the county had knowledge that the passenger might harm someone with it. The county refused to accept the plaintiff's modification to its proposed instruction, and the circuit court gave neither the plaintiff's nor defendant's version of this tailor-made instruction.

The defendant relies on *Nashville, C. & St. L. Ry. Co. v. Lowery's Adm'r*, 148 Ky. 599, 147 S.W. 19 (C.A. Ky. 1912), *Fletcher v. Baltimore & P.R. Co.*, 168 U.S. 135 (1897), *Louisville Taxicab & Transfer Co. v. Jackson*, 251 S.W.2d 874 (Ky 1952), and 14 Am. Jur. 2d, *Carriers*, sec. 927, p. 358 (1964), to support its proposed instruction. We read these authorities as supporting the plaintiff's view of the law, not the defendant's, and we conclude that the circuit court was correct in refusing to instruct the jury as requested by the defendant.

In the *Nashville* case, *supra*, the appellate court reversed an award against the railroad in favor of the plaintiff, a pedestrian who had been shot by a passenger on defendant's train. Passengers with guns were probably not unusual in 1912, and there was nothing in the rec-

ord to indicate that the carrier could know or anticipate that the passenger would misuse the weapon. The Kentucky court concluded that because there was insufficient evidence to show that the railroad knew or had reason to know that the passenger would use the gun in this manner, the railroad was not negligent in supervision of the passenger. The court said:

"Had he, with the knowledge of those in charge of the train, been engaged in shooting from the train, or had his conduct been such as to indicate with reasonable certainty that he intended to shoot from the train, a different case would be presented." 147 S.W. at 23.

In *Fletcher, supra,* the railroad was held liable to a passerby injured by railroad workmen who threw debris off a moving train. In *Fletcher* there was evidence that workmen frequently engaged in this practice. The court concluded that where a custom and practice of throwing things off the train was established, there was sufficient proof that the carrier had reason to know that the act would be committed and had a duty to use due care to prevent the act and injury. The county read *Fletcher* to say that the carrier is not liable unless plaintiff proves there is a "custom" that people on the vehicle throw things out of the windows. This reading is too narrow.

In the *Louisville Taxicab* case, *supra,* the appellate court held that the taxicab company was not liable when passengers in the cab threw a bottle at a passerby, because there was no evidence that the carrier or its agent knew or had reason to have anticipated that the passengers had a bottle.

The general rule of the duty of common carriers set forth in *American Jurisprudence* is that the carrier is not liable when the passenger throws an object at a pedestrian if the carrier "has no reason to anticipate such conduct on the part of the passenger." The county refers to the following language from the encyclopedia:

"A common carrier is required to exercise reasonable or ordinary care to see to it that passengers on its conveyances shall not be guilty of any act which might reasonably be called dangerous and liable to result in injuries to persons on the street, such as throwing of articles out of its windows. However, a carrier is not liable for injuries sustained by a pedestrian when struck by an article thrown from its conveyance by a passenger where the carrier had no reason to anticipate such conduct on the part of the passenger." 14 Am. Jur. 2d, *Carriers,* sec. 927, p. 358.

These authorities cited by the county do not limit the carrier's liability to situations in which the carrier has knowledge that the passenger intends to throw an object out of the vehicle. These authorities support the view espoused by the plaintiff that the carrier's duty to use reasonable care to prevent an act by a passenger is established if the carrier has reason to anticipate that a negligent or intentional act might be committed by a passenger. Hence we conclude that the circuit court was correct in refusing to instruct the jury as requested by the county.

While the instructions given by the circuit court were correct, the instructions would have been more complete had the circuit court given the plaintiff's version of the tailor-made instructions. Because the county objected to the tailor-made instructions proposed by the plaintiff and failed to object to the instructions given by the court, the county cannot now assert error in the instructions. It is well-settled law that failure to object to proposed instructions on grounds of incompleteness or other error constitutes waiver of any error. Sec. 805.13(3), Stats. 1979–80; *Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 309–11, 296 N.W.2d 749 (1980).

The county further asserts that the evidence is insufficient as a matter of law to sustain the verdict because the plaintiff failed to produce evidence to support the jury's implicit finding that the county had a duty to use reasonable care, *i.e.*, that the bus driver knew or had reason to anticipate that Lucas might use his slingshot to shoot an object out the bus window.

On appeal the issue for this court is not whether this court would have rendered the same verdict as the jury, but whether there is any credible evidence in the record and reasonable inferences that can be drawn therefrom to sustain the jury's verdict. The evidence is viewed in the light most favorable to support the jury verdict. *Lehman v. Sentry Ins. Co.*, 35 Wis.2d 96, 98, 150 N.W.2d 333 (1967). If there is credible evidence or reasonable inferences drawn therefrom to support the jury's finding that the county had a duty to use reasonable care with regard to supervising the passengers on the bus, this court will affirm the judgment.

On review of the testimony which we have previously summarized above, we conclude that there was credible evidence and reasonable inferences therefrom for the jury to find that the bus driver knew or had reason to anticipate that Lucas would fire his slingshot outside the window. There was testimony that the bus driver saw Lucas seated next to an open window and holding a slingshot. The bus driver testified that he thought that the slingshot might be used inside the bus. Even though the driver testified that he did not see the boy firing the slingshot, the jury did not have to accept that testimony. The jury could reasonably infer from the fact that the driver told Lucas to put away the slingshot shortly after Lucas fired it outside the window that the bus driver

knew the boy had fired the slingshot outside the window.[3] Or the jury could infer from all the evidence that the bus driver had reason to anticipate that Lucas might fire the slingshot outside the window. The jury could conclude on the basis of this record that the bus driver, although he had to devote much of his energy and attention to driving a bus with many passengers through city traffic, knew or had reason to know that Lucas and his slingshot might be a danger to pedestrians and that the bus driver had a duty to exercise ordinary care to prevent foreseeable harm. Viewing the evidence in the most favorable light to the jury verdict, as we are obliged to do, we conclude that there is credible evidence and reasonable inferences drawn therefrom to support the jury's finding that the county had a duty to use reasonable care to supervise the passengers on the bus.

Finally, the county, citing *Coffey v. Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976), urges this court to hold the county not liable on public policy grounds. In the *Coffey* case this court explained the doctrine of public policy in negligence cases as follows:

"[T]his court has held that even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on

[3] The county argues that Lucas' testimony that his seatmate told him the bus driver was watching him as he fired the jelly bean that hit the plaintiff was inadmissible hearsay to which proper objection was made. We conclude that the testimony was properly admitted. The defendant's objection was not timely, and the testimony was admissible under sec. 908.03(1), Stats. 1979–80, as a present sense impression. See *State v. Smith*, 36 Wis. 2d 584, 594–95, 153 N.W.2d 538 (1967).

the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point." *Coffey v. Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132 (1976).

The county argues that permitting recovery against it in the instant case puts an unreasonable burden on the county to monitor the passengers on its buses. The county's brief explains the county's position as follows:

"To permit recovery under the circumstances herein would certainly shock the conscience of society and allowance of such recovery certainly places an unreasonable burden upon the county by forcing it to monitor each and every passenger on each of its buses to determine whether or not any potential item that the passenger may have might be used on any particular occasion to cause injury to unknown individuals. To impose such a duty upon the County will in effect give a blank check to individuals injured by the acts of third persons so long as either the injured person or the third person is a passenger on a bus or is even near a bus at the time an incident occurs."

We are not persuaded by the county's argument, and we decline to depart from accepted principles of tort law to spare the county from liability in the instant case. Negligent supervision of passengers by a common carrier is not a new or unique basis of liability. Moreover, the county's fear that if this court affirms the judgment in the instant case, the county would have to search each and every bus passenger and would have to compensate every pedestrian injured by a passenger on a county bus is unwarranted. The county confuses the concepts "reason to know" and "should know." *Christians v. Homestake Enterprises, Ltd.,* 101 Wis. 2d 25, 48–50, 303 N.W.2d 608 (1981). In this case, the "reason to know" test is adopted. The plaintiff in the instant case was

required to produce substantial evidence that the bus driver knew or had reason to know of the passenger's potentially dangerous act and that the bus driver had the opportunity to use reasonable measures to prevent the passenger's conduct but failed to do so.

The purpose of the rule set out in the *Coffey* case is to protect a defendant from the possibility of burdensome liability for remote, unforeseeable injuries. We decline to adopt the county's position that public policy requires the county to be relieved of liability in all cases in which a pedestrian is injured by a passenger or that public policy requires the county to be relieved of liability in this particular case.

## IV.

After the jury returned its verdict of $36,000 the circuit court reduced the award to $25,000 plus costs reasoning that the limitation of sec. 895.43(3), Stats. 1977, applies. Sec. 895.43(3), Stats. 1977, provides as follows:

"The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $25,000. No punitive damages may be allowed or recoverable in any such action."

The plaintiff argues that the limitation of $25,000 set forth in sec. 895.43(3) is not applicable to this case because secs. 345.05(2)(a) and (3)(b), Stats. 1977, which govern claims for damage resulting from the negligent operation of a motor vehicle owned and operated by a

municipality, are applicable. Secs 345.05 (2) (a) and (3) (b) provide as follows:

"(2) Any of the following may file a claim for damages. . . . (a) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by the state or a municipality, which damage was occasioned by the operation of such motor vehicle in the course of its business. . . .

"(3) The manner and form of and the place for filing claims shall be:

". . .

"(b) If against any municipality, as provided in s. 895.43, except the limitations of s. 895.43(3) shall be inapplicable."

The county contends that the injury in the case at bar did not result from "the negligent operation of a motor vehicle" owned and operated by a municipality.[4] The plaintiff urges this court to view the operation of a motor vehicle as involving both the mechanical task of driving or parking and the supervisory task of controlling the conduct of passengers. Plaintiff cites *Schroeder v. Chapman*, 4 Wis. 2d 285, 90 N.W.2d 579 (1958), as supportive of his position that negligent supervision of the passengers constitutes negligent operation of a bus. In *Schroeder* the plaintiff was injured as the result of the county's failure to warn oncoming motorists that a county vehicle was blocking the highway up ahead. The court concluded that the failure to warn and the blocking of the highway were both encompassed within the statutory standard of "negligent operation of a motor vehicle" reasoning that:

---

[4] The county also argues that sec. 345.05, Stats. 1979–80, as amended by Laws of 1977, chapter 285, s. 4, 8, makes the $25,000 limitation of sec. 895.43(3) applicable to actions arising out of the negligent operation of a motor vehicle under sec. 345.05(2). We need not reach this issue because we determine that the action brought by the plaintiff does not involve the negligent operation of a motor vehicle.

"The blocking of the highway and the giving of a proper warning are necessarily intermingled. . . . In this case there is not only a reasonable, but a direct connection between the use of the truck and the insufficiency of the warning. . . ." 4 Wis. 2d at 293–94.

The critical point in *Schroeder* was that the warning required was directly related to the position of the county vehicle on the highway, and the vehicle on the highway whether stationary or moving is what the "operation of a motor vehicle" is all about.

We conclude that the facts of the instant case are more akin to the facts in *Rabe v. Outagamie County,* 72 Wis. 2d 492, 241 N.W.2d 428 (1976). In *Rabe* the plaintiff was injured when a tree stump rolled off the back of a county-owned and operated vehicle while the plaintiff and others were loading stumps from the roadway onto the vehicle. This court concluded that the negligence in loading the vehicle constituted negligence in the *use* of the vehicle but did not constitute negligence in the *operation* of a motor vehicle under sec. 345.05. We said that "sec. 345.05 is applicable when the injury can be traced to incidents of vehicle operation on the highway rather than any collateral use such as loading." 72 Wis. 2d at 497.

The *Schroeder* and *Rabe* cases attempt to draw a line between operation of a motor vehicle and the collateral use of a motor vehicle. In *Rabe* we concluded sec. 345.05 was not so all encompassing as to include all aspects of "ownership, maintenance and use" of a motor vehicle and that negligence in the uses of the vehicle other than in the operation of the vehicle was to be governed by the provisions of sec. 895.43. The cases appear to limit operation of a motor vehicle to those activities which involve the mechanical functioning of a motor vehicle. We conclude that the negligent supervision of passengers on a bus is

not an activity which involves the mechanical functioning of a motor vehicle. Hence we hold that the circuit court was correct in holding that sec. 895.43 (3), Stats. 1977, is applicable and in entering judgment against the county for $25,000 plus costs.

For the reasons previously stated, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

STEINMETZ, J. (*dissenting*). I would reverse and order a new trial pursuant to sec. 751.06, Stats.[1]

The real controversy in this case has not been fully tried, and it is probable that justice has miscarried, since a proper special instruction was not given the jury as to how to determine the negligence, if any, of the bus driver.

Since the allegation of negligence that should have been examined involved the potential duty and possible breach of the duty of a common carrier driver to a person outside of the bus, the jurors would not have common knowledge of the requirements and, therefore, a special instruction was necessary.

The bus driver's duties in operating a large vehicle in city traffic with the necessity of observing other traffic, pedestrian and vehicular, the bus's position on the roadway, and observing passengers' actions as to location,

[1] Sec. 751.06, Stats., provides:

"**751.06 Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

movement on or off the bus and their behavior are not matters within the experience of the ordinary person to determine the bus driver's exercise of reasonable care in carrying out his responsibilities.

In this case, the parties could not agree on which version of the instruction to give and, therefore, the trial judge gave neither of the proposed instructions and none of his own. The judge's duty was to give what he believed to be the proper special instruction and not avoid the issue by giving neither.

The county wanted the special instruction to state that negligence required the bus driver have knowledge that Michael Lucas had a slingshot and *"intended to harm"* someone with it. The plaintiff was willing to agree to the county's proposed instruction if it were changed to *"might harm"* someone with it.

The judge gave neither version of the special instruction and instead gave the ordinary negligence instruction for the county transit system's duty in supervising passengers' actions. That, however, did not fulfill the trial judge's duty of instruction. He was required to give that form of special instruction which he judged proper. The judge herein gave no proper special instruction, and the majority ignores that fatal error. He should have given what he believed to be the proper instruction even over the county's objection and not have left the jury to speculate in an area outside common knowledge and experience.

The majority favors the version of the special instruction requested by the plaintiff and holds:

"These authorities support the view espoused by the plaintiff that the carrier's duty to use reasonable care to prevent an act by a passenger is established if the carrier has reason to anticipate that a negligent or intentional act might be committed by a passenger. Hence we conclude that the circuit court was correct in refusing

to instruct the jury as requested by the county." (*Supra,* at 271.)

It is not sufficient in deciding this case to state as the majority says:

"If there is credible evidence or reasonable inferences drawn therefrom to support the jury's finding that *the* county had a duty to use reasonable care with regard to supervising the passengers on the bus, this court will affirm the judgment." (*Supra,* at 272.)

The jury had no proper instruction to apply to the facts to determine reasonable care. Lack of reasonable care, according to the majority, arose only if the driver (1) had knowledge of the passenger possessing a slingshot and (2) that the passenger *"might harm"* someone with it. The jury did not know that two requirements were necessary before reasonable case was required. It was necessary for a proper determination of the negligence of the bus driver for them to know what law to apply.

The attorney for the county did not object to the instruction as given, but only objected to the court's refusal to give his client's requested instruction. Therefore, under sec. 805.13(3), Stats., the attorney's failure to object to the judge's proposed instruction at the instruction conference constituted a waiver of the instruction given. Reversal is still necessary, however, since the real issue was not decided by the jury.

The majority states that both parties agreed that the county in this case was a common carrier and had the duty to use reasonable care in the operation of the vehicle and in the supervision of the conduct of the passengers on the vehicle to protect pedestrians from injury. Assuming that to be correct, the majority then sustains the jury verdict, since the jury found: "that the bus driver knew or had reason to anticipate that Lucas might use his slingshot to shoot an object out the bus window." (*Supra,* at 272.) That is not enough for liability.

The majority approves the instruction proposed by the plaintiff, *i.e.*, that the bus company had to have knowledge that the passenger had a slingshot and to have knowledge that the passenger *might harm* someone with the slingshot before the county's duty to use reasonable care is established.

It is proper for this court to accept the theory of law that the plaintiff approved; however, the jury was not told that the test had two elements: (1) knowledge that a passenger had a slingshot, and, (2) knowledge that the passenger *might harm* someone with the slingshot, before the county's duty to use reasonable care was established.

This legal instruction was necessary; it was not enough to merely inform the jury of the exercise of ordinary care standard that the "great mass of humankind ordinarily exercises under the same or similar circumstances." The common carrier's duties cannot be judged by that standard of care.

Accordingly, I would reverse in the interests of justice and remand to the trial court for a new trial.