# FLETCHER *v.* BALTIMORE AND POTOMAC RAILROAD COMPANY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 56.  Argued October 20, 21, 1897. — Decided November 1, 1897.

The plaintiff in error was a workman employed by the defendant in error at its workshop in Washington. Returning from his day's labor, he stopped at the intersection of South Capitol Street and Virginia Avenue, to enable a repair train to pass him. · It was and for a long time had been the custom of the railroad company to allow its workmen, who went out on the repair train in the morning, to bring back with them on their return in the evening sticks of refuse timber for their individual use as firewood, and these men were in the habit of throwing their pieces off the train while in motion, at the points nearest their own homes, being cautioned on the part of the company not to injure any one in doing it. As the train passed the plaintiff in error, such a piece of refuse wood was thrown from it by one of the men. It struck the ground, rebounded, struck the plaintiff in error, and injured him seriously and permanently. He sued the company to recover damages. After the plaintiff's evidence was in and he rested, the defendant moved for a verdict in its favor, which motion was granted. *Held,* that this was error; that the question whether the defendant was negligent should have been submitted to the jury; and that it was for the jury to say whether the custom on the part of the workmen was known to the company, whether

if known it was acquiesced in, whether it was a dangerous custom from which injury should have been apprehended, and whether there was a failure, on the part of the defendant, to exercise reasonable care, in view of all the circumstances, to prohibit the custom and prevent the performance of the act.

The duty to use ordinary care and caution is imposed upon a railroad company to the extent of requiring from it the use of reasonable diligence in the conduct and management of its trains, so that persons or property on the public highway shall not be injured by a negligent or dangerous act performed by any one on the train, either a passenger, or an employé, acting outside of and beyond the scope of his employment.

A railroad company owes a duty to the general public, and to individuals who may be in the streets of a town through which its tracks are laid, to use reasonable diligence to see to it that those who are on its trains shall not be guilty of any act which might reasonably be called dangerous and liable to result in injuries to persons on the street, where such act could have been prevented by the exercise of reasonable diligence on the part of the company.

If, through and in consequence of its neglect of such duty, an act is performed by a passenger or employé, which is one of a series of the same kind of acts, and of which the company had knowledge and in which it acquiesced, and the act is in its nature dangerous, and a person lawfully on the street is injured as a result of it, the railroad company is liable.

The fact that the custom had existed for some time without any injuries having been received by any one is not a legal bar to the liability of the company.

THE case is stated in the opinion.

*Mr. Franklin H. Mackey* for plaintiff in error.

*Mr. William Henry Dennis* for defendant in error. *Mr. Enoch Totten* was on his brief.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This action was brought by the plaintiff in error to recover damages from the defendant corporation, for personal injuries which he alleged he received by reason of the negligence of its agents and servants.

The evidence given upon the trial upon the part of the plaintiff tended to show that on or about the 16th day of May, 1890, the defendant was a railroad corporation doing

business in the District of Columbia, and that on the day above mentioned, at the city of Washington in that District, the plaintiff was in the employment of the defendant and had been working at its workshop; that he had finished his work for the day at about a quarter of six in the evening, and leaving the shop had started for his home. When he reached the intersection of South Capitol Street and Virginia Avenue he stopped for a moment, and while standing on the pavement on the south side of the railway track, which was in the middle of Virginia Avenue, a repair train of the defendant corporation passed by him on its return from work for the day. Some of the testimony showed that the train was passing at the rate of twenty miles an hour, while other testimony showed a much less rate of speed. As the train passed the plaintiff one of the workmen on board threw from the car on which he was standing a stick of bridge timber about six inches square and about six feet long. It struck the ground and rebounded, striking the plaintiff and seriously and permanently injuring him. The defendant had been in the daily habit for several years of running out of Washington and Alexandria a repair train of open flat cars loaded with its employés, and the train returned every evening about six o'clock and brought the workmen back to their homes. These men were allowed the privilege of bringing back with them, for their own individual use for firewood, sticks of refuse timber left over from their work after repairing the road, such as old pieces of bridge timber, cross-ties, etc. It was the constant habit of the men during all these years to throw off these pieces of firewood while the train was in motion at such points on the road as were nearest their homes, where the wood was picked up and carried off by some of the members of their families or other person waiting there for it. The only caution given the men on the part of the servants or agents of the company was that they should be careful not to hurt any one in throwing the wood off. The foreman of the gang was the man who usually gave such instruction.

This evidence having been given, the plaintiff rested, and the defendant then moved for the direction of a verdict in its

favor, which motion was granted, and the judgment entered on the verdict having been affirmed by the Court of Appeals, 6 App. D. C. 385, is now before us for review.

In this ruling of the courts below we think there was error.

We are not called upon to say that the defendant was in fact guilty of negligence. The courts below have held as matter of law that the company was not liable, and hence a verdict in its favor was directed. On the contrary, we think the question whether the defendant was negligent was one which should have been submitted to the jury.

The plaintiff at the time of the accident had finished his employment for the day, and had left the workshop and grounds of the defendant, and was moving along a public highway in the city with the same rights as any other citizen would have. The liability of the defendant to the plaintiff for the act in question is not to be gauged by the law applicable to fellow-servants, where the negligence of one fellow-servant by which another is injured imposes no liability upon the common employer. The facts existing at the time of the happening of this accident do not bring it within this rule. A railroad company is bound to use ordinary care and caution to avoid injuring persons or property which may be near its track. This is elementary. Shearman & Redfield on Negligence, (3d ed.) § 477 and cases cited in notes. The duty to use ordinary care and caution is imposed, as we think, upon the company to the extent of requiring from it the use of reasonable diligence in the conduct and management of its trains, so that persons or property on the public highway shall not be injured by a negligent or dangerous act performed by any one on the train, either a passenger or an employé acting outside and beyond the scope of his employment. The company does not insure against the performance of such an act, but it rests under an obligation to use reasonable diligence to prevent its occurrence. An act of such a nature, either by a passenger or by an employé outside the scope of his duties and employment, is not to be presumed, and therefore negligence on the part of the company in failing to prevent the act could not probably be shown by proof

of a single act of that kind, even though damage resulted, where there was nothing to show the company had any reason to suppose the act would be committed. Negligence on the part of the company is the basis of its liability, and the mere failure to prevent a single and dangerous act, as above stated, would not prove its existence. The persons on this train were employés, in fact, and were being transported to their homes by the company, which had, during the time of such transportation, full control over their actions. Whether or not they were through with their work is not material.

If the act on the car were such as to permit the jury to find that it was one from which, as a result, injury to a person on the street might reasonably be feared, and if acts of a like nature had been and were habitually performed by those upon the car to the knowledge of the agents or servants of the defendant, who with such knowledge permitted their continuance, then in such case the jury might find the defendant guilty of negligence in having permitted the act and liable for the injury resulting therefrom, notwithstanding the act was that of an employé and beyond the scope of his employment and totally disconnected therewith. Knowledge on the part of the defendant, through its agents or servants, that passengers or employés upon its trains were in the habit of throwing out of the windows newspapers, or other light articles, not in their nature dangerous, would not render the company liable on the ground of negligence, although on some one occasion an individual might be injured by such act. The result in that case would be so unexpected, so extraordinary and so unnatural that a failure to prevent the custom could not be said to be negligence. But if a passenger upon a train or an employé of the company upon one of its cars should supply himself with a quantity of stones for the purpose of throwing them off the train as it passed through a city, can it be possible that under such circumstances, if this intended use of the stones came to the knowledge of those who had the conduct of the train, it would not be their duty to prevent the act? And would it be any answer for the company, when charged with negligence in knowingly or negligently permit-

ting such passenger or employé to throw the stones, to say
that the person throwing them was a passenger, or, if an em-
ployé, that he had completed his work for the day and was
being transported to his home on the car of the company, and
that the act was without the scope of his employment? Surely
not. It is not a question of scope of employment or that the
act of the individual is performed by one who has ceased for
the time being to be in the employment of the company. The
question is, does the company owe any duty whatever to the
general public, or, in other words, to individuals who may be
in the streets through which its railroad tracks are laid, to use
reasonable diligence to see to it that those who are on its trains
shall not be guilty of any act which might reasonably be called
dangerous and liable to result in injuries to persons on the
street, where such act could by the exercise of reasonable
diligence on the part of the company have been prevented?
We think the company does owe such a duty, and if through
and in consequence of its neglect of that duty an act is per-
formed by a passenger or employé which is one of a series of
the same kind of act and which the company had knowledge
of and had acquiesced in, and if the act be in its nature a
dangerous one, and a person lawfully on the street is injured
as a result of such an act, the company is liable. Any other
rule would in our opinion be most disastrous, and would be
founded upon no sound principle.

We feel quite clear that, from the evidence in this case, it
was for the jury to say whether the custom was sufficiently
proved, and whether the act was of a nature from which in-
jury to a person on the street might reasonably be expected,
and also whether such acts had theretofore been performed
with the knowledge and consent of the agents and servants
of the defendant, and whether the company was guilty of an
omission of the duty which it owed to the plaintiff as one
of the public, lawfully using the street where the track was.
We do not say that the jury should be instructed to find that
the defendant was guilty of negligence in case they found
from the evidence that this custom was known to its officers
or agents, but we do say that the custom being known,

whether it was negligence or not for the company to permit it under all the circumstances, was a question to be decided by the jury and not by the court.  The company of course is not an insurer of the safety of the public in the highway along or near which its road may run, but it is bound, as we have stated, to use reasonable diligence to see to it that no dangerous acts which may result in injury to persons lawfully on the highway shall be committed by persons who are on its trains, whether as passengers or employés.  If it neglect that duty, then there is a liability on its part to respond in damages for the injury resulting from that neglect.

The fact that this custom had existed for some time without any injuries having been received by any one is not a legal bar to the liability.  It may be addressed to the jury as an argument upon the question whether the act was in its nature dangerous, and whether under all the circumstances the company was guilty of any negligence in permitting its continuance; but if the character of the act complained of is such that a jury might upon the evidence fairly say that injury to others might reasonably be apprehended, the fact that none such had theretofore occurred is not an answer as matter of law to the charge of negligence in continuously permitting acts of that nature.  As against the contention that this act was not in its nature dangerous it might be urged to the jury that the caution given to be careful showed that there might be danger in the performance of the act itself.  It would be for the jury to answer the question.

We are not able to see the bearing upon this case of the case of *Walton* v. *New York Central Sleeping Car Co.*, 139 Mass. 556.  In that case there was but a single act, that of throwing the bundle from the train by the porter of the parlor car ; there was no evidence that any officer of the company on the train had the least reason to suppose the porter intended to do the act or that it had been habitually done before ; no evidence of any custom known to the defendant by which at that or any other particular point the porter of the car habitually and frequently threw bundles from the moving train.  Acquiescence on the part of the defendant

after knowledge of the custom could not from the one act be imputed to it. Very probably, a single act so performed by the porter without the knowledge or assent of the defendant — performed for his own purposes and not in the scope of his employment, unexpected and wholly disconnected from his duties — would not render the defendant liable for the injuries resulting to a third person from such act. If, however, it had been proven in that case that it was the custom on the part of the porters on that car to throw these bundles off while the train was in motion, and that this custom was known to the officers of the company, and was permitted by them, with the simple injunction that the porters should take care and not hurt anybody, and if the jury found that the act was one dangerous in its nature, we think there is no doubt that the defendant would be liable for the injuries resulting from any one of such acts.

The trial court in the case cited, while holding the defendant not responsible, said: "The defendant is not responsible if the injury to the plaintiff was done by Maxwell, the servant of the defendant, without the authority of the defendant, and not for the purpose of executing the defendant's orders or doing the defendant's work, and not while acting as such servant in the scope of his employment." The important point was, it is to be observed, that the act of Maxwell, although the servant of the defendant, was without its authority, knowledge or acquiescence. In this case, upon the evidence submitted, the jury might be asked to infer knowledge on the part of the defendant of the existence of the custom and acquiescence on its part in such custom, and that therefore the acts of the individuals in throwing the timber were acts which were performed with the authority of the defendant. The act would be performed with the authority of the defendant, if, being aware of the custom, the defendant or its agents permitted such acts and made no effort to prevent their performance and issued no orders forbidding them. If the jury should also find that the act was one of a dangerous nature, from which injury to an individual on the roadside might reasonably be expected, then the jury

might find the defendant guilty of a neglect of duty in permitting its performance.

We do not think the case of *Snow* v. *Fitchburg Railroad*, 136 Mass. 552, can be distinguished from this case by reason of the simple fact that the person injured was a passenger who was at the station and upon the platform where the mail bag was thrown. It may be true the defendant owes a higher duty to its passengers, in the shape of a greater degree of care, than it does to the public generally, but it is a question only of degree. It owes a duty to the public not to injure any one negligently, and the facts in this case make it a question for the jury to say whether it has not been guilty of negligence resulting in plaintiff's injury.

Considerable stress was laid upon the case of *Walker* v. *Hannibal & St. Joseph Railroad*, 121 Missouri, 575, as an authority against the principle which we have above referred to. We have examined that case and regard the facts therein set forth as so materially different that the case cannot be regarded as opposed to the views we have stated. The baggagemaster in gratuitously taking in his car the drills (not properly baggage) which he threw out at the station as he passed through, was held not to have been acting within the scope of his employment, and as there was no proof of knowledge on the part of the railroad authorities, it was held that the railroad company was not responsible for this act of the baggagemaster not done in the scope of his employment and of which they had no notice. It is stated in the opinion that the trainmaster, the superintendent of the defendant and also the general agent were all ignorant that the drills were being carried by the baggageman on the passenger train, and, in speaking of the act and the arrangement under which it was performed, the court said : " The arrangement seems to have been one between plaintiff for the lime company and James, the train baggageman, with reference to something not in the line of his employment, and of which his employer had no knowledge and gave no consent."

Upon the whole, we think it was a question for the jury to say whether the custom was proved ; whether, if proved, it

was known to and acquiesced in by those in charge of the train as servants of the company; whether it was a dangerous act, from which injury to a person on the street might reasonably be apprehended, and if so, whether there was a failure on the part of the defendant to exercise reasonable care, in view of all the circumstances, to prohibit the custom and prevent the performance of the act.

For these reasons we are of the opinion that the judgment should be

*Reversed, and the cause remanded to the Court of Appeals of the District of Columbia, with directions to reverse the judgment of the Supreme Court of the District of Columbia and to remand the case to that court with directions to grant a new trial.*