Samuel J. UNGLO, as Administrator of the Estate of Michael R. Unglo, Deceased, Appellant

v.

Bishop David A. ZUBIK and the Roman Catholic Diocese of Pittsburgh, Appellees.

Superior Court of Pennsylvania.

Argued June 22, 2011.

Filed Sept. 29, 2011.

Alan H. Perer, Pittsburgh, for appellant.

Joseph Selep, Pittsburgh, for Catholic Diocese, appellee.

BEFORE: FORD ELLIOTT, P.J.E., BENDER, and STRASSBURGER \*, JJ.

OPINION BY STRASSBURGER, J.:

Samuel J. Unglo (Appellant), as Administrator of the Estate of Michael R. Unglo, deceased, appeals from the trial court's order entered October 12, 2010, sustaining preliminary objections in the nature of a demurrer filed by Bishop David A. Zubik and the Roman Catholic Diocese of Pittsburgh (collectively the Diocese), and dismissing his complaint. We affirm.

The facts, as recited from Appellant's complaint and construed most favorably to Appellant, are ably summarized by the trial court, as follows:

> From 1982 to 1985, Michal R. Unglo ["Decedent"] was a victim of extreme sexual abuse at the hands of a priest at All Saints Church. During this time, [Decedent] was a student at All Saints School and alter [sic] boy at All Saints Church.
>
> Thereafter, [Decedent] attended North [Catholic] High School, graduated from the University of Pennsylvania with honors, and became employed in the advertising field in New York City where he was successful professionally.
>
> In June 2008, as a result of the effects of the extreme sexual abuse, [Decedent] attempted to take his own life in New York City.
>
> In July 2008, the Diocese of Pittsburgh undertook to provide services to [Decedent]; initially, the Diocese forwarded payment for counseling and treatment.
>
> On December 6, 2008, Bishop Zubik met with two brothers of [Decedent] and made a commitment to do whatever it takes to right the wrong that was done to [Decedent].[1] Subsequently, the Diocese provided treatment through payments to hospitals and later outpatient treatment.
>
> In June 2009, [Decedent] attempted suicide for the second time. The Dio-

---

\* Retired Senior Judge assigned to the Superior Court.

1. [Appellant] is not contending that statements made at this meeting created any contractual obligations.

cese continued to provide payment for services for treatment at Bellevue Hospital, at Sheppard Pratt (a residential retreat program), and later at Austen Riggs.

In early 2010, the Diocese indicated that it would not financially support any further services or treatment; it would issue a final payment for $75,000 regardless of [Decedent's] need for further treatment. On March 17, 2010, the Diocese forwarded to [Decedent] a release and indicated that whether or not the release was signed, $75,000 would be their final payment and that no further services or treatment would be provided for by the Diocese.

On April 5, 2010, a psychotherapist at Austen Riggs Center advised the Diocese that [Decedent] needed continued treatment because of emotional dysregulation and suicidal behavior. [The Diocese] knew or should have known that their decision to discontinue further payment for psychiatric treatment would result in the termination of necessary medical care, thereby causing serious harm to [Decedent]. [The Diocese] also knew or should have known that their advising [Decedent] that they were discontinuing payment for further psychiatric treatment would likely cause severe emotional distress to [Decedent].

The decision to terminate further support resulted in [Decedent] taking his life on May 4, 2010. At the time of [Decedent's] suicide, he was still in the care of the Austen Riggs Center.

Trial Court Opinion, 10/12/2010, at 1–2 (footnote in original).

On July 29, 2010, Appellant filed a wrongful death complaint against the Diocese, alleging the above facts. On August 23, 2010, the Diocese filed preliminary objections, claiming, *inter alia*, that the facts pleaded by Appellant did not establish a legal duty as a matter of law. Following briefing and argument, the trial court, by order dated October 12, 2010, sustained the preliminary objections and dismissed Appellant's complaint with prejudice. On October 15, 2010, Appellant filed a motion for reconsideration, which the trial court subsequently denied. This timely appeal followed.[2]

On appeal, Appellant presents the following issue with sub-parts for our review:

1. Whether the Complaint, with all allegations taken as true, set forth a cause of action under Section 323 of the Restatement (Second) of Torts?

 (A) Whether, in addition to "negligent performance," a plaintiff may recover for a defendant's "negligent partial performance" or "negligent termination of services" under § 323 of the Restatement (Second) of Torts.

 (B) [Appellant] has alleged that the Diocese's decision to terminate payments for medical treatment caused [decedent] severe emotional distress leading to his suicide. Do such allegations give rise to a cause of action under § 323 of the Restatement (Second) of Torts?

Appellant's Brief at 4.

 This Court, in reviewing an appeal from the grant of preliminary objections in the nature of a demurrer, must treat as true all well-pleaded material, factual averments and all inferences fairly deducible therefrom. Where the preliminary objections will result in the dismissal of the action, the objections may

---

**2.** The trial court did not direct that a Pa. R.A.P. 1925(b) statement be filed and none was filed.

be sustained only in cases that are clear and free from doubt. To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred. Any doubt should be resolved by a refusal to sustain the objections. Moreover, we review the trial court's decision for an abuse of discretion or an error of law....

In assessing the propriety of the trial court's decision to sustain preliminary objections, we examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven.

*D'Elia v. Folino,* 933 A.2d 117, 121 (Pa.Super.2007) (quotations and citations omitted).

█ Appellant asserts that the trial court failed to recognize that the facts alleged in the complaint were sufficient to state a cause of action. Specifically, Appellant contends that he alleged facts to support a claim in negligence under the Restatement (Second) of Torts § 323, namely that the Diocese's discontinuance of payments for psychological treatment caused the decedent to suffer severe emotional distress that ultimately resulted in his suicide.

█ To establish a viable cause of action in negligence the pleader must aver in his complaint "a duty, a breach of that duty, a causal relationship between the breach and the resulting injury, and actual loss." *Fee-*

*ney v. Disston Manor Personal Care Home, Inc.,* 849 A.2d 590, 594 (Pa.Super.2004). Appellant sought to establish negligence based upon section 323 of the Restatement (Second) of Torts, which provides as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) His failure to exercise such care increases the risk of such harm, or

(b) The harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1965).[3] Instructive in this action is Comment "c" to section 323, which reads:

c. *Termination of Services.* The fact that the actor gratuitously starts in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him. His motives in discontinuing the services are immaterial. It is not necessary for him to justify his failure to continue the services by proving a privilege to do so, based upon his private concerns which would suffer from the continuance of the service. He may without liability discontinue

---

**3.** Section 323 has been adopted as the law in Pennsylvania. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 746 (1984); *Cooper v. Frankford* *Health Care System, Inc.,* 960 A.2d 134, 145–45 (Pa.Super.2008); *Filter v. McCabe,* 733 A.2d 1274 (Pa.Super.1999).

the services through mere caprice, or because of personal dislike or enmity toward the other.

Where, however, the actor's assistance has put the other in a worse position than he was in before, either because the actual danger of harm to the other has been increased by the partial performance, or because the other, in reliance upon the undertaking, has been induced to forego other opportunities of obtaining assistance, the actor is not free to discontinue his services where a reasonable man would not do so. He will then be required to exercise reasonable care to terminate his services in such a manner that there is no unreasonable risk of harm to the other, or to continue them until they can be so terminated.

The trial court concluded that under the facts of this case, section 323 did not provide a basis for establishing a negligence claim against the Diocese. In so concluding, it reasoned:

In this case, [the Diocese] had undertaken, gratuitously, to render services to [Decedent] which [the Diocese] should have recognized as necessary for the protection of [Decedent's] person. However, under § 323, they are subject to liability only for harm resulting from the failure to exercise reasonable care in performing the undertaking. The undertaking for which reasonable care must be exercised ceases when the actor chooses to discontinue services. Comment c provides that the actor "may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him." In other words, liability must be based on the failure to exercise reasonable

care to perform the undertaken services prior to the termination of services.

In this case, it is not alleged that [Decedent] was at a greater risk of harming himself because of the assistance provided by [the Diocese]. Consequently, the exception to the rule, that an actor may without liability discontinue the services for any reason whatsoever, does not apply.

It is clear from Comment c that § 323 is not intended to require an actor who begins furnishing services to continue these services for as long as they are needed.

Trial Court Opinion, 10/12/2010, at 5.

This case turns on the interpretation of Comment c to § 323. Appellant relies on the portion of the Comment [4] that states "the actor is not free to discontinue his services where a reasonable man would not do so." Appellant's Brief at 8. Thus, continues Appellant, the question to be determined by a trier of fact is "whether the Diocese exercised reasonable care in its decision to terminate [Decedent's] necessary treatment." *Id.* at 9.

Appellant totally misreads Comment c. The language above quoted, in the second paragraph of Comment c, follows the first paragraph which states that "gratuitously start[ing] in to aid another does not necessarily require him to continue his services. He is not required to continue them indefinitely, or even until he has done everything in his power to aid and protect the other. **The actor may normally abandon his efforts at any time unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him**.... **He may without liability discontinue the services**...."

\* \* \*

4. Appellant's brief states this is in the text of § 323; it is in Comment c.

Then the second paragraph, before reaching the language Appellant quotes, continues: "**Where, however, the actor's assistance has put the actor in a worse position than he was in before ... the actor is not free to discontinue his services where a reasonable man would not do so.**" Thus, the language about not discontinuing the services if a reasonable man would not do so comes into play only where the actor (Diocese) has put the other (Decedent) in a worse position than he was in before.

Appellant argues that the question of whether decedent was in a worse position than before the Diocese gratuitously began to fund his psychological services is of necessity a jury question and thus the learned trial court erred in sustaining the Diocese's demurrer.

Undoubtedly there will be instances where the issue of whether the recipient of services has been placed in a worse position is a factual question for the trier of fact. That is not this case. The trial court addressed this issue.

> [T]he complaint includes allegations that on June 20, 2008 (this being before counseling and other treatment) [Decedent] attempted to take his own life and that in June 2009 (while outpatient treatment was being provided) [Decedent] again attempted to take his own life. Thus, [Appellant] is not in a position to allege that the Diocese, by notifying [Decedent] that it would be discontinuing payments for further treatment, can be viewed as putting [Decedent] in a worse position than he was in before the Diocese began paying for treatment.

Trial Court Memorandum, 11/8/2010, at 1.

We agree. Decedent was suicidal[5] before the Diocese aided him; he was suicidal while the Diocese aided him; and unfortunately, he was suicidal after being informed that aid was being terminated.[6] As the Diocese had not put Decedent in a worse position than before services began, the Diocese was free to discontinue services without liability.

Order affirmed. Jurisdiction relinquished.

5. In his brief, Appellant tries to argue that Decedent did not really attempt suicide, but rather made cries for help. This is belied by the complaint.

> 14. On June 20, 2008, as a result of the effects of the extreme sexual abuse that had been perpetrated on him, Michael R. Unglo attempted to take his own life in New York City.
> * * *
> 18. Subsequently, in June of 2009, Michael R. Unglo attempted a second suicide in New York City.

Complaint, 7/29/2010, at ¶¶ 14 and 18.

6. The trial judge held that the allegation that Decedent took his own life as the result of termination of services was inconsistent with the allegation within the complaint that Decedent was still receiving services at the time of his suicide. Trial Court Memorandum, 11/8/2010, at 1. We agree with Appellant that this is a misreading of the complaint, which alleges the suicide was caused not by the termination of services but rather by Decedent's having been informed that services would be terminated.

The discrepancy is a moot point because, as previously noted, the complaint is clear that Decedent was not in a worse position than before the Diocese provided services.