NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 12-2692 and 12-2780
_____

ANDREW SABRIC, Co-Executor of the Estate of Deborah Bachak;
GENEVIEVE SABRIC, Co-Executor of the Estate of Deborah Bachak,

Appellants in No. 12-2692

v.

LOCKHEED MARTIN; U.S. SECURITY ASSOCIATES, INC.,

Lockheed Martin,

Appellant in No. 12-2780
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 3-09-cv-02237
(Honorable A. Richard Caputo)
_____

ARGUED
March 5, 2013

Before: SCIRICA, JORDAN, and ROTH, *Circuit Judges*.

(Filed: July 24, 2013)

Vincent S. Cimini, Esq. [ARGUED]
Sal Cognetti, Jr., Esq.
Foley, Cognetti, Comerford, Cimini & Cummins
507 Linden Street
7th Floor
Scranton, PA 18503

    Counsel for Appellants/Cross-Appellees Andrew Sabric and Genevieve Sabric

Barbara S. Magen, Esq.
Post & Schell
1600 John F. Kennedy Boulevard
Four Penn Center, 14th Floor
Philadelphia, PA 19103

Joseph F. McNulty, Jr., Esq.
Jonathan B. Sprague, Esq. [ARGUED]
Post & Schell
1245 South Cedar Crest Boulevard
3rd Floor
Allentown, PA 18103

    Counsel for Appellee/Cross-Appellant Lockheed Martin Corp

Jill Cantor-Burns, Esq. [ARGUED]
Jay L. Edelstein, Esq.
Edelstein Law
230 South Broad Street
Suite 900
Philadelphia, PA 19102

    Counsel for Appellee US Security Associates Inc.

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge.*

This case arises out of the deadly shooting of Deborah Bachak, a Lockheed Martin Corporation employee, by her former paramour, George Zadolnny. Zadolnny was a security guard with U.S. Security Associates and worked at the Lockheed facility. Bachak's parents and estate brought suit against Lockheed and U.S. Security, alleging defendants' negligence caused Bachak's death. Lockheed asserted a cross-claim against U.S. Security for indemnification.

We will affirm the District Court's order insofar as it granted summary judgment to Lockheed and U.S. Security on plaintiffs' negligence claims. We will reverse as to Lockheed's cross-claim and remand to the District Court with instructions that summary judgment be entered for Lockheed.

I.

Pursuant to a security services contract, U.S. Security provided uniformed security guards to the Lockheed facility. One guard per shift was armed. In May 2004, U.S. Security hired Zadolnny as the first-shift armed security officer for the Lockheed facility. Bachak was a long-time Lockheed employee working in the Document Control Department. Bachak and Zadolnny entered into a romantic relationship in late 2007. They moved in together in early 2008 and became engaged that spring. Bachak terminated the relationship between August and October of 2008.

On December 16, 2008, while on duty, Zadolnny left the guardhouse under the guise of going to the restroom. He walked over to the Document Control Room, encountered Bachak, and asked if she would speak with him in the mailroom. Once

3

Bachak met Zadolnny in the mailroom, he shot her five times. Zadolnny took his own life immediately after killing Bachak.

Bachak's parents (the "Sabrics") brought suit individually and as co-executors of Bachak's estate in the Lackawanna County Court of Common Pleas. Against Lockheed, plaintiffs asserted claims for negligence, vicarious liability, wrongful death, and a survival action. Against U.S. Security, plaintiffs asserted claims for negligence, assault and battery, vicarious liability, wrongful death, and a survival action. Lockheed removed the action to the District Court for the Middle District of Pennsylvania, where both Lockheed and U.S. Security moved to dismiss the action for various reasons. The District Court largely denied their motions. Lockheed then brought a cross-claim against U.S. Security, contending U.S. Security was contractually obligated to indemnify it.

After discovery, defendants moved for summary judgment against plaintiffs. The District Court granted defendants' motion, finding Lockheed and U.S. Security did not owe Bachak any duty and therefore could not be held liable under a negligence theory.[1] Lockheed also moved for summary judgment on its indemnification claim against U.S. Security. The District Court denied this motion and dismissed the cross-claim because U.S. Security was adjudicated non-negligent. The Sabrics appeal, asserting both Lockheed and U.S. Security owed Bachak a duty and breached it. Lockheed cross-appeals the denial of its claim for indemnification.

---

[1] The District Court also granted summary judgment to U.S. Security on the vicarious liability claim (finding plaintiffs abandoned it) and the assault and battery claim (finding no evidence that U.S. Security had reason to suspect Zadolnny would act violently or that U.S. Security would have been able to control his conduct). Plaintiffs do not appeal these rulings.

4

## II.[2]

To establish a claim for negligence, the plaintiff must show: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) there is a causal connection between the defendant's breach and the plaintiff's injury; and (4) the plaintiff incurred actual loss. *Feeney v. Disston Manor Personal Care Home, Inc.*, 849 A.2d 590, 594 (Pa. Super. Ct. 2004). Whether the defendant owed a duty of care under the first element is a question of law. *Matharu v. Muir*, 29 A.3d 375, 384 (Pa. Super. Ct. 2011). The inquiry involves "weigh[ing] several discrete factors, including: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution." *Lindstrom v. City of Corry*, 763 A.2d 394, 397 (Pa. 2000).

Plaintiffs assert defendants owed Bachak a duty under three theories: (A) Section 317 of the Restatement (Second) of Torts; (B) Section 323 of the Restatement; and (C) non-Restatement Pennsylvania common law. We will address each theory in turn.

## A.

---

[2] The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a)(1), as the Sabrics are residents of Pennsylvania; U.S. Security is a corporate citizen of Delaware; Lockheed is a corporate citizen of Maryland; and the amount in controversy exceeds $75,000. We have jurisdiction under 28 U.S.C. § 1291, as this is an appeal from final judgment. We review the grant of summary judgment *de novo*, applying the same standard as the District Court. *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is appropriate "when there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Id.*

Plaintiffs assert that under § 317 of the Restatement (Second) of Torts, defendants had a duty to exercise reasonable care so as to control Zadolnny because defendants knew of his propensity for violent behavior.[3] The District Court found the Pennsylvania Supreme Court's decision in *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418 (Pa. 1968), was on point and precluded a duty under § 317 because Zadolnny's allegedly dangerous disposition was never reported to the management or human resources department of either defendant.[4] On appeal, plaintiffs contend the trial court erred in failing to consider evidence establishing that both Lockheed and U.S. Security knew or should have known of the risk of harm Zadolnny posed to Bachak.

---

[3] Section 317 states the following:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> (a) the servant
> > (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> > (ii) is using a chattel of the master, and
> (b) the master
> > (i) knows or has reason to know that he has the ability to control his servant, and
> > (ii) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 317 (1965); *see also Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 419-20 (Pa. 1968) (approving the use of § 317 as an accurate statement of Pennsylvania law).

[4] Although Zadolnny was a U.S. Security employee, for the purpose of the analysis, the District Court assumed Zadolnny was also an employee of Lockheed, as opposed to an independent contractor. We make the same assumption for the purpose of our analysis.

6

In *Dempsey*, Steinberg, a bus terminal security guard employed by Walso Bureau, attacked dispatcher Dempsey and pinned him to the ground. *Id.* at 419. Dempsey brought a personal injury suit against Walso Bureau, contending the company knew or should have known of Steinberg's dangerous propensity for violence and should not have continued to employ him.

> The record reveal[ed] the following prior actions of Steinberg: (a) Williams, a bus driver, had seen Steinberg push drunken persons out of the bus terminal but had never seen him use his night stick on them; (b) Vincent, a bus driver, had seen Steinberg bang his night stick on walls and doors of the terminal but never in any other manner, had seen Steinberg grab and push terminal employees in 'horse-play', although such actions did not appear to Vincent to be injurious; (c) Burnett, a porter, stated that Steinberg had jabbed him in the back with his night stick which Steinberg seemed to think was a joke but did not seem so to Burnett; (d) Alston, an express and baggage agent, saw Steinberg grab employees, jab them with his night stick and, on one occasion, put his night stick between Alston's legs while he was bending over and, on this occasion, Alston told Steinberg that he would punch him if such action was repeated and Steinberg never did it again; (e) Sigman, a bus driver, saw Steinberg hit, with his night stick, the soles of the shoes of a man sleeping in the terminal; (f) Svtser, a ticket agent, saw Steinberg strike, with his night stick, the feet of persons sleeping in the terminal and put such persons out of the terminal by pushing them in the back with his stick.

*Id.* at 422-23. The Pennsylvania Supreme Court found Steinberg's prior actions constituted annoying horseplay but "did not show a propensity on the part of Steinberg which was vicious or dangerous and which indicated that he intended to inflict injury upon others." *Id.* at 423. Nor, the court found, should Walso Bureau have known of any dangerous propensities of Steinberg because the supervisor never received any report of Steinberg's actions. *Id.*

7

*Dempsey*'s reasoning extends beyond contexts involving horseplay. In drawing the conclusion that Walso Bureau did not owe Dempsey a duty under § 317, the court relied on *Fletcher v. Baltimore & Potomac R.R. Co.*, 168 U.S. 135 (1897), which preceded the Restatement (Second) of Torts. In *Fletcher*, the Court held that

> if by reason of neglect to perform its duty to see that its employees do not act in a manner dangerous to other persons, an act is performed by an employee outside the scope of his employment and such act is one of a series of the *same kind of acts* of which the employer had knowledge and in which it acquiesced and, if such act of the employee is in its nature dangerous, then the employer is liable to one injured by its employee.

*Dempsey*, 246 A.2d at 422 (emphasis added) (citing *Fletcher*, 168 U.S. 135).

Thus, while a wayward employee need not have committed the *exact same* act in the past (e.g., murder) in order to hold the employer liable under § 317, the wayward employee must have committed prior acts of the same general nature as the one for which the plaintiff brings suit—acts that show the employee is "vicious or dangerous and . . . intended to inflict injury upon others." *Id.* at 423. *Compare Hutchison ex rel. Hutchison v. Luddy*, 742 A.2d 1052, 1059 (Pa. 1999) (finding that diocese had a duty under § 317 to prevent priest from molesting more children where diocese knew that priest had engaged in pedophilic behavior in the past) *with R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 698-99 (Pa. Super. Ct. 2000) (finding church was not liable under § 317 for minister's sexual abuse of child, where the only warning signs were an unsubstantiated rumor that minister was having an extramarital affair and a statement by minister to church members that he had an excessive interest in pornography as a young man).

8

Viewing the facts in the light most favorable to plaintiffs, and drawing all inferences in their favor, *MD Mall Associates, LLC v. CSX Transp., Inc.*, 715 F.3d 479, 485 n.6 (3d Cir. 2013), we find the evidence insufficient to establish a duty under § 317 on the part of either defendant. Supervisors at Lockheed and U.S. Security knew, at best, that Zadolnny had sometimes become agitated and angry, had verbally lashed out, and harbored a vendetta toward his ex-fiancée. This knowledge was insufficient to place defendants on notice that Zadolnny would one day physically harm Bachak.[5] *See also*

---

[5] We have carefully considered plaintiffs' allegations and evidence regarding what supervisors knew about Zadolnny prior to the shooting.

Plaintiffs contend that U.S. Security knew or should have known that Zadolnny was dangerous because supervisors were aware that Zadolnny had dated Bachak, wanted to single her out for "random" searches, and occasionally argued with his fellow guards. Plaintiffs also cite the fact that two U.S. Security guards stated they warned a U.S. Security supervisor that Zadolnny should not be permitted to carry a gun. In Lockheed's Final Report of the shooting incident, U.S. Security guard Kathy Calabrese said that she reported to U.S. Security site supervisor Captain Frank Capobianco that "Zadolnny had a temper and should not be carrying a gun." J.A. vol. III, 311. Calabrese also said that she told first-shift supervisor Sergeant Robert Peterlin that Zadolnny smelled like alcohol and that someone needed to talk to Anthony Sacco, U.S. Security's Regional Supervisor, about Zadolnny because she was concerned he was "drained and exhausted." *Id.* at 310. In the same report, U.S. Security guard William Toms stated that he predicted to Capobianco that the Zadolnny-Bachak relationship would "end in a tragedy." *Id.* at 326. Toms also stated that he told Capobianco, "This guy should not carry a gun or someone will get hurt." *Id.*

We first note that under *Dempsey*, the § 317 inquiry focuses on whether the employer knew of prior acts by the employee—not conclusory opinions from his coworkers—that evince the employee's propensity for violence. Thus, even though Calabrese and Toms stated they shared concerns with their supervisor, their opinions, conveyed without any supporting facts, were insufficient to put U.S. Security on notice of the risk Zadolnny posed to Bachak. Moreover, the prior acts of which U.S. Security supervisors were aware—including Zadolnny's arguments with fellow guards and desire to single out Bachak for searches—did not, by their nature, suggest a propensity for violent behavior.

Plaintiffs' evidence with respect to Lockheed is even more tenuous. Plaintiffs contend that Lockheed knew or should have known that Zadolnny was dangerous

9

*Davis v. Weyerhaeuser Co.*, 373 P.2d 985, 994 (Or. 1962) (finding that where employee was known to be ornery, quarrelsome, and a bully, there was still no evidence that employee had a reputation for being vicious or dangerous).

In their briefs, plaintiffs highlight additional instances of Zadolnny's problematic behavior but fail to establish that reports of these instances were made to defendants' management or human resources personnel. In *Dempsey*, the court explained that because no supervisor had ever been given a report concerning Steinberg's actions, it could not find that Walso Bureau should have known of Steinberg's violent tendencies. 246 A.2d at 423. The same is true here. As the District Court explained,

> Decedent and her co-workers did not find Zadolnny's conduct necessary to warrant the lodging of a complaint with Lockheed's Human Resources Department. And, without such a complaint, the Court cannot avoid the inevitable conclusion that the necessity to control Zadolnny's conduct did not exist because he was not known, nor was he believed to be prior to the date of the shooting, to present an unreasonable risk of harm to Decedent.

*Sabric v. Lockheed Martin Corp.*, No. 3:09-2237, 2012 WL 1952197, at *9 (M.D. Pa. May 30, 2012).

Given the lack of evidence suggesting Zadolnny was vicious or dangerous or that Lockheed or U.S. Security should have known of the risk he posed, the District Court

---

because Charles Hughes, Lockheed's Director of Human Resources, received a report that Zadolnny once angrily confronted a coworker for speeding. Plaintiffs also seize on statements made by Document Control Room Supervisor Ann Marie Juris: in Lockheed's Final Report, Juris stated that she witnessed Zadolnny yell at Bachak, and that Bachak told her that she did not like the way Zadolnny yelled at her.

At most, these incidents demonstrate that Zadolnny had some propensity toward yelling when agitated; these incidents were again insufficient to put one on notice that Zadolnny had a propensity toward violent behavior.

10

found that defendants did not owe Bachak a duty under § 317 of the Restatement. We agree.

B.

Plaintiffs assert that by instituting certain policies, defendants undertook to provide a protective service to Bachak, and thereby acquired a duty under § 323 of the Restatement (Second) of Torts to implement these policies with reasonable care.[6] Plaintiffs contend the District Court erred in failing to consider all of the policies that defendants had in place, including Lockheed's Workplace Security policy, Harassment-Free Workplace policy, and Post Orders/Standard Operating Procedures for Contract Guard Force.[7] Plaintiffs also bring our attention to U.S. Security's internal rule

---

[6] Section 323 states the following:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965); *see also Morena v. S. Hills Health Sys.*, 462 A.2d 680, 684 (Pa. 1983) (approving the use of § 323 of the Restatement as an accurate statement of Pennsylvania law).

[7] The Workplace Security policy states Lockheed's goal of providing a workplace free from threats and acts of violence. It discusses employees' responsibility to report and management's responsibility to appropriately respond to any threatened or actual harm to persons or property. The Harassment-Free Workplace policy prohibits harassment and outlines procedures for reporting it. The Post Orders discuss what Lockheed requires of its guard staff, including the duties to abide by Lockheed rules, respond to threat situations, and report violent acts to supervisors or the human resources department.

prohibiting guards from fraternizing with client-employees. But even assuming that (1) by instituting these policies, defendants undertook to protect Bachak from the harm that occurred here, and (2) at least some of these policies were negligently implemented by Lockheed and U.S. Security personnel, we nonetheless agree with the District Court that these policies did not constitute actionable undertakings under either prong of § 323.

We have said that for § 323(a) to apply, "the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 432 (3d Cir. 1991); *see also Unglo v. Zubik*, 29 A.3d 810, 815 (Pa. Super. Ct. 2011) (finding where decedent was suicidal before and after diocese intervened and offered counseling services, diocese was free to discontinue services at any time because it did not put decedent in a worse position than before services began).

No policy that plaintiffs assert defendants negligently implemented caused Bachak to be placed in a worse position than she would have been in the absence of the policy. Without Lockheed's anti-harassment policy, Bachak would have been subject to harassment without any internal corporate means to address it. And without Lockheed's Workplace Security policy and Post Orders (both of which directed personnel on how to identify and react to potentially violent situations), there would have been no coordinated effort to prevent or respond to workplace violence. Moreover, it is plaintiffs' position that U.S. Security's no-fraternization policy was effectively ignored with respect to Bachak and Zadolnny. Thus, the existence of the no-fraternization rule did not place Bachak in greater danger than if it had not been implemented at all.

12

Plaintiffs are no more successful under § 323(b) because Bachak did not rely on any of these policies to her detriment. As mentioned, Bachak and Zadolnny disregarded U.S. Security's no-fraternization rule. Similarly, Bachak never reported any threats or harassment to security, management, or the human resources department as required by Lockheed's policies addressing violence in the workplace. Indeed, when Lockheed employee Richard Lombardo became concerned that Zadolnny was bothering Bachak on the morning of the shooting, Bachak downplayed the situation and asked Lombardo twice to "leave it alone," and not report Zadolnny to the human resources department. J.A. vol. IX, 1112.

Bachak's failure to invoke the protective policies of Lockheed and U.S. Security precludes a finding of reliance. *Cf. Jain v. State*, 617 N.W.2d 293, 299-300 (Iowa 2000) (finding school had no duty under § 323 where it offered suicide prevention services but student refused to take advantage of them). In addition, at least one court has found that an employee could not have relied on an employer for protection where the employee did not evince any awareness of the threat to herself. *See Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 561 (E.D. Pa. 2004) ("[E]ven if we were to assume that Wal–Mart did assume a duty to protect Plaintiff . . . , there is no evidence on the record that would even suggest . . . that Plaintiff was shot on Sunday because she relied on a belief that her employer would protect her from any violence from Bryan. In fact, Plaintiff did not even expect that Bryan would harm her physically at the Wal–Mart, much less shoot her.").

Given that there is no genuine issue of material fact that Bachak either (a) was made worse off by defendants' policies, or (b) relied on these policies to her detriment,

13

we agree with the District Court that defendants did not owe Bachak a duty under Restatement § 323.[8]

## C.

Plaintiffs contend that even if we decline to find a duty under §§ 317 or 323 of the Restatement, we should nonetheless recognize that defendants had a duty to provide a safe workplace under Pennsylvania non-Restatement common law. But the duty to provide a safe workplace is essentially the duty to prevent foreseeable acts of harm. *See Mike v. Borough of Aliquippa*, 421 A.2d 251, 257 (Pa. Super. Ct. 1980) (finding that Borough, as employer of police officers, failed to provide employee with a safe working place where "there was a wealth of evidence from which the jury could conclude that the Borough should have foreseen criminal, possibly violent, acts by the constables"). As we previously stated, Zadolnny's violent act was not reasonably foreseeable to Lockheed and U.S. Security. Thus, any non-Restatement common law claim, if one exists, must fail.[9]

## III.

---

[8] Plaintiffs also contend Lockheed's security protocols made Bachak worse off under § 323 because she was prohibited from carrying a weapon to protect herself. But if Bachak had perceived a threat, she still could have protected herself by making a report to management or the human resources department. There was also no credible evidence that the murder occurred because Bachak relied on the no-weapons policy.

Lastly, plaintiffs allege that defendants were negligent in the supervision, management, and training of the employees who provided protective services to Bachak. We think this argument is a recharacterization of plaintiffs' argument under § 317 and dispose of it as such.

[9] Because we find that neither Lockheed nor U.S. Security may be held liable to plaintiffs under a negligence theory, we needn't consider whether Lockheed is vicariously liable for U.S. Security's actions.

Lockheed appeals the District Court's denial of its motion for summary judgment and dismissal of its cross-claim against U.S. Security for indemnity. Lockheed asserts that it is contractually entitled to reimbursement from U.S. Security for litigation costs and attorneys' fees, regardless of whether U.S. Security is adjudicated non-negligent.

A section of the parties' contract entitled "Insurance/Entry on Lockheed Martin Property" requires that if U.S. Security or its employees enter the Lockheed facility, U.S. Security must obtain general liability, bodily injury, and property damage insurance in reasonable amounts. This section then states:

> [U.S. Security] shall defend, indemnify and hold harmless [Lockheed], its officers, employees, and agents from any losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys fees, all expenses of litigation and/or settlement, and court costs, by reason of property damage or loss or personal injury to any person caused in whole or in part by the actions or omissions of [U.S. Security], its officers, employees, agents, suppliers, or subcontractors.

J.A. vol. X, 1388.

In Pennsylvania, "[w]hen the words of a contract are clear and unambiguous, the meaning of the contract is ascertained from the contents alone." *Mace v. Atl. Ref. Mktg. Corp.*, 785 A.2d 491, 496 (Pa. 2001). The contract here unambiguously entitles Lockheed to reimbursement for all litigation expenses that it incurs because of *any act or omission* of a U.S. Security employee that caused property damage, loss, or personal injury to another. We decline U.S. Security's invitation to read the contract as only providing indemnification for an act or omission by U.S. Security that the court determines was negligent. If the parties intended that Lockheed only be reimbursed for "any negligent act" committed by U.S. Security, they could have said as much.

15

In addition, we do not find compelling U.S. Security's assertion that the parties would never have agreed to such sweeping indemnity rights. U.S. Security's liability to Lockheed is not endless under our reading of the contract; it is limited to expenses that Lockheed incurs because of acts and omissions of U.S. Security and its employees. It is not unreasonable that the parties would agree to such an arrangement.[10]

Since Lockheed incurred costs and attorneys' fees in defending a suit precipitated by an act of a U.S. Security employee, U.S. Security is contractually obligated to reimburse Lockheed for these expenses.

IV.

We will affirm the District Court's grant of summary judgment to defendants Lockheed and U.S. Security on the Sabrics' negligence claims. With respect to Lockheed's indemnity cross-claim, we will reverse and remand to the District Court with instructions that summary judgment be entered for Lockheed.

---

[10] A separate section of the contract entitled "Independent Contractor Relationship" states:

> [U.S. Security] shall be responsible for and hold harmless [Lockheed] and its customers from and against all losses, costs, claims, causes of action, damages, liabilities, and expenses, including attorneys fees, all expenses of litigation and/or settlement, and court costs, arising from any act or omission of [U.S. Security], its officers, employees, agents, suppliers, or subcontractors at any tier, in the performance of any of its obligations under this Contract.

J.A. vol. X, 1388. U.S. Security asserts that it is not contractually required to indemnify Lockheed because Zadolnny's actions were not "in the performance of" U.S. Security's obligations under the contract. But the indemnity provision in the "Insurance/Entry on Lockheed Martin Property" section contains no "in the performance of" limitation. We will not read in this qualification to a provision that contains no reference to it.